IN THE MATTER OF: TAMMY RICHARD AND LAURA RICHARD, MINOR CHILDREN, CELESTE RAST, GUARDIAN AD LITEM, PETITIONER v. ROSEMARY LEE MICHNA (A/K/A ROSEMARY KWIATKOWSKI) AND RENE PAUL RICHARD, RESPONDENTS

No. 9228DC662

(Filed 6 July 1993)

**Parent and Child § 116 (NCI4th) — termination of parental rights — appointment of guardian ad litem for parent — not raised at trial level — required**

A termination of parental rights proceeding was remanded for a new trial with a guardian ad litem appointed for the respondent mother where petitioner alleged and the trial court found that the respondent was incapable of proper care and supervision of her children because of mental retardation and other mental conditions but the issue of appointing a guardian ad litem was never presented at the trial court level. N.C.G.S. § 7A-289.23 mandates the appointment of a guardian ad litem where it is alleged that a parent's rights should be terminated pursuant to N.C.G.S. § 7A-289.32(7), which permits a court to terminate parental rights where the parent is incapable of providing proper care and supervision of the child as a result of mental retardation, mental illness, organic brain syndrome, or any other degenerative mental condition. N.C.G.S. § 7A-289.23 is clearly mandatory and does not require or imply that it is the respondent's responsibility to ask for a guardian ad litem.

**Am Jur 2d, Parent and Child § 7.**

Appeal by respondent Rosemary Michna from judgment entered 5 December 1991 in Buncombe County District Court by Judge Rebecca B. Knight. Heard in the Court of Appeals 25 May 1993.

This case arises from a petition for termination of parental rights brought by the guardian ad litem against respondents Rosemary Michna and Rene Richard. The record tends to show the following facts and circumstances leading up to this action:

Respondents Rosemary Michna and Rene Richard are the mother and father of two minor children, Tammy and Laura. The minor children have been in the continuous care of the Buncombe County

IN RE RICHARD v. MICHNA

[110 N.C. App. 817 (1993)]

Department of Social Services (hereinafter "the Department") since 4 July 1989.

On 1 July 1989, the respondent mother left the minor children in Asheville, North Carolina with a twenty-year-old babysitter while respondent mother went to Massachusetts to visit her mother who was allegedly ill at the time. When she left, respondent mother did not have the financial resources to return to North Carolina. She gave the babysitter $60.00 for the care of her children, and told the babysitter she would wire more money when she got to Massachusetts. Respondent mother never wired any money.

On 4 July 1989, the babysitter, while giving the minor children a bath, noticed that their vaginal openings were unusually large. She took the children to the hospital and it was determined that they had been sexually abused. The children indicated they had been sexually abused by Richard Michna, respondent mother's husband at the time. When a social worker contacted respondent mother in Massachusetts concerning the 4 July report, respondent mother stated she knew Richard Michna had sexually abused the children, and she would get him out of the home as soon as she returned from Massachusetts. The respondent mother also indicated that the minor children had been sexually abused by their natural father, Rene Richard, by her brother-in-law, Mark Michna, by her sister-in-law, Sharon Michna, and by two teenagers. The minor children were taken into custody of the Department on 4 July 1989. Respondent mother eventually returned from Massachusetts on 1 August 1989, almost one month later. When she returned from Massachusetts, she moved back in with Richard Michna and continued to live with him for some time thereafter.

The Department has been involved with respondent mother and the two minor children on several prior occasions when it received complaints alleging sexual abuse and neglect. The previous sexual abuse allegations were not substantiated but the Department did find substantial neglect and developed services for the family, including family counseling, developmental evaluation, and household monitoring. Prior to these services being implemented, however, respondent mother left for Massachusetts.

Respondent mother was evaluated on 19 September 1989 and again on 6 May 1991. The tests revealed that respondent mother is mildly mentally retarded, has a personality disorder that is resistant to treatment, and is involved in substance abuse. On 10 January

1990, respondent mother was hospitalized in a psychiatric unit for eight days for suicidal tendencies and unstable behavior.

After she was released, respondent mother was admitted to the Richmond Hill Rest Home as a resident, at the request of respondent mother's social worker. Barbara Williams, the owner of the rest home, agreed to allow respondent to become an employee of Richmond Hill. Respondent mother was employed at Richmond Hill, on and off, from late January 1990 through November 1990. The longest time that respondent mother worked at Richmond Hill at any one continuous period was for four months. She quit her job several times because Ms. Williams would not allow respondent mother's boyfriend, who drank and used drugs, to spend the night with her at Richmond Hill. Respondent mother left the employment of Richmond Hill Rest Home for the last time in November 1990 after a disagreement with Ms. Williams. Respondent mother has not been able to keep a job nor has she had steady employment since leaving Richmond Hill in November 1990.

In December 1990, respondent mother informed a social worker that she was returning to Massachusetts to take care of her sick mother. Respondent mother called the social worker a few weeks later to say that she was not coming back, that she had run into an old friend, Mark Michna, the brother of Richard Michna, and that they were engaged to be married. Respondent mother told the social worker that Mark Michna was one of the persons who had sexually abused her children. The proposed marriage fell through.

Respondent mother returned to Asheville in April 1991. Shortly thereafter, she met Dewey Shelton and married him on 4 May 1991, although she did not know whether she was legally divorced from Richard Michna. Respondent mother then moved into Mr. Shelton's place of residence, a two-bedroom construction trailer in very poor condition. The trailer had no electricity, no running water in the kitchen, and a large hole in the bathroom floor. Two of Mr. Shelton's three children by a previous marriage live with respondent mother and Mr. Shelton in the trailer.

Respondent mother testified at trial that she was receiving SSI in the amount of $339.00 a month, that she is not employed, and that she lives with her husband, Dewey Shelton. At no time while the children were in the custody of the Department did respondent mother make any child support payments for the children.

When the children were removed from the custody of their mother, the minor child, Tammy, was pre-anorexic and diagnosed as being a failure to thrive child. Both Tammy and Laura appeared traumatized by and frightened of their mother. At first, after each visit with their mother, their behavior would deteriorate, the children would have nightmares and spells of uncontrollable screaming during the day, and they became incontinent. Their visits with respondent mother in 1991 were not as traumatic, but there was no bonding between the children and their mother.

Respondents' case was handled by the Department from July 1989 through 13 June 1991, when a petition was filed seeking to terminate parental rights. Although the petition for termination was served on respondent Rene Richard on 18 June 1991, he did not file an answer or response to the petition, nor was he present in court. A hearing on the petition was held on 25 September 1991. As a result of the hearing, the trial court made extensive findings of fact and conclusions of law and entered its order of 5 December 1991 terminating respondent appellant's parental rights, as well as those of the children's natural father. From that judgment, respondent Rosemary Michna appeals.

*Barry L. Master; and Charlotte A. Wade; for petitioner-appellees.*

*Kathy A. Gleason; and Susan C. Lewis; for respondent-appellant.*

WELLS, Judge.

Appellant's first assignment of error is a generalized, non-specific statement that the trial court erred in entering judgment terminating her parental rights. Pursuant to this "broadside" assignment, appellant asserts for the first time on appeal that she was denied due process because she was not appointed a guardian ad litem, citing and relying on the provision of N.C. Gen. Stat. § 7A-289.23. We find, without addressing respondent's due process objection, that G.S. § 7A-289.23 mandates the appointment of a guardian ad litem and requires reversal on this basis alone.

N.C. Gen. Stat. § 7A-289.23 provides as follows:

The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent. The parent has the right to counsel and to appointed counsel in cases of indigency unless the parent waives the right.

. . . In addition to the right to appointed counsel . . . a guardian ad litem shall be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent in the following cases:

    (1) Where it is alleged that a parent's rights should be terminated pursuant to G.S. 7A-289.32(7)

G.S. § 7A-289.32(7) permits a court to terminate parental rights where "the parent is incapable as a result of mental retardation, mental illness, organic brain syndrome, or any other degenerative mental condition of providing for the proper care and supervision of the child. . . ." Here, the petitioner alleged and the trial court found, *inter alia*, the respondent mother was incapable, because of mental retardation and other mental conditions, of proper care and supervision of her children. Respondent mother had a right to a guardian ad litem under these circumstances; however, a review of the record indicates that the respondent mother never petitioned the trial court to appoint a guardian ad litem, nor did she object to the failure to have one appointed at trial. In short the issue was never presented at the trial court level.

    The question before us now is whether respondent mother's right to a guardian ad litem under these circumstances may be waived by failure to assert that right at trial. We note initially that this is a case, of apparent first impression in this State, inasmuch as we have been unable to locate published opinions dealing with this precise issue involving G.S. § 7A-289.23.

    Instead, we rely on the well established law regarding waiver of a statutory or constitutional right. The general rule, set forth in *In re Bullabough*, 89 N.C. App. 171, 365 S.E.2d 642 (1988), is that failure to assert a statutory or constitutional right in the trial court is a waiver of that right. *See also State v. Gaiten*, 277 N.C. 236, 176 S.E.2d 778 (1970). This broadly stated rule does not hold, however, where the statute in question is expressly mandatory in nature. The North Carolina Supreme Court shed light on this exception.

    When a trial court acts contrary to a statutory *mandate*, the error ordinarily is not waived by the defendant's failure to object at trial. We also have recognized that a trial court sometimes has a duty to act *sua sponte* to avoid statutory violations; for example, the trial court must exclude evidence

rendered incompetent by statute, even in the absence of an objection by the defendant.

*State v. Hucks*, 323 N.C. 574, 374 S.E.2d 240 (1988) (citations omitted). The court further noted that this exception does not apply where a statute requires a motion by the defendant before he is entitled to the rights it guarantees or where the trial court is only required to act when prompted to do so by the litigants. In such cases, the general rule of waiver adheres.

G.S. § 7A-289.23 is clearly mandatory, and its mandate is directed to the trial court. It expressly requires that a guardian ad litem "shall be appointed" whenever the petitioner alleges, as it did here, that parental rights should be terminated because the parent is incapable of proper care and supervision of the children due to mental retardation or other mental condition. Under G.S. § 1A-1, Rule 17, only the trial court has the authority to make the appointment of the guardian ad litem. The statute does not require, nor does it imply, that it is the respondent's responsibility to ask for the appointment of the guardian ad litem. *See Hucks, supra.*

While inclined to note that we do not believe respondent mother has in any way been prejudiced by this error, in keeping with the clear import of *Hucks*, we are persuaded that the mandate of the statute must be observed, and a guardian ad litem must be appointed.

We therefore remand this case for a new trial with a guardian ad litem to be promptly appointed for the respondent mother to accommodate the statutory requirement of G.S. § 7A-289.23. In so doing, it appears obvious to us that the children should remain in the physical custody of the Department of Social Services pending further adjudication, due to the aggravated circumstances and evidence of abuse in this case. The portion of the trial court's order terminating the parental rights of the respondent father, not having appealed in this action, remains undisturbed.

Reversed and remanded for a new trial.

Judges COZORT and JOHN concur.