IN THE MATTER OF: JESSICA DHERMY, MINOR CHILD

No. COA03-71

(Filed 2 December 2003)

### 1. Termination of Parental Rights— failure to appoint guardian ad litem—juvenile dependency

The trial court did not err in a termination of parental rights case by failing to appoint a guardian ad litem to represent respondent mother even though juvenile dependency was alleged as a ground for termination, because: (1) the Department of Social Services (DSS) only argued and the trial court ultimately terminated respondent's parental rights under N.C.G.S. § 7B-1111(a)(1) which requires no appointment of a guardian ad litem; (2) a valid finding on one statutorily enumerated ground is sufficient to support an order terminating parental rights; and (3) although DSS should have formally dismissed N.C.G.S. § 7B-1111(a)(6) as a ground for termination prior to the hearing, respondent was not prejudiced by this error since it was not pursued by DSS at the hearing or found as a ground for termination by the trial court.

### 2. Termination of Parental Rights— neglect—clear, cogent, and convincing evidence

The trial court did not err by terminating respondent mother's parental rights based on neglect under N.C.G.S. § 7B-1111(a)(1), because clear, cogent, and convincing evidence revealed that: (1) the trial court's findings of fact established that the minor child was neglected by respondent over a four-year period; and (2) the findings of fact supported the probability of the repetition of neglect if the minor child is returned to respondent's care.

### 3. Termination of Parental Rights— purpose and legislative intent of statutes

The trial court did not fail to consider the purpose and legislative intent of pertinent statutes regarding the severance of a parent-child relationship when it terminated respondent mother's parental rights after finding clear, cogent, and convincing evidence that supported neglect as a ground for termination. N.C.G.S. §§ 7B-100, 7B-1110.

**IN RE DHERMY**

[161 N.C. App. 424 (2003)]

**4. Termination of Parental Rights— standard of review— clear, cogent, and convincing evidence**

Although respondent mother contends that the trial court allegedly used the wrong standard in concluding that a ground existed to terminate her parental rights, the judgment affirmatively stated that the court concluded that clear, cogent, and convincing evidence supported a finding of neglect as a ground for termination.

**5. Termination of Parental Rights— best interests of child— two phases of termination proceeding**

The trial court did not abuse its discretion in a termination of parental rights case by concluding that it was in the best interests of the minor child to terminate respondent mother's parental rights allegedly without conducting the two phases of a termination of parental rights proceeding, because: (1) our statutes and case law have not set forth a requirement that the two phases be conducted during separate hearings; (2) the trial court made numerous findings regarding the extensive sexual abuse the minor child suffered at the hands of her half-brother and also her stepfather, of which respondent acknowledged awareness but failed to protect the minor child; and (3) the trial court found that respondent lacked insight regarding her own significant mental health issues, played a significant role in creating a neglectful and abusive home environment, and made minimal progress in correcting the issues that led to the minor child's removal from the home.

Appeal by respondent mother from judgment entered 30 May 2002 by Judge Earl J. Fowler, Jr. in Buncombe County District Court. Heard in the Court of Appeals 11 September 2003.

*Charlotte A. Wade for petitioner-appellee Buncombe County Department of Social Services.*

*Attorney Advocate Judith Rudolph, Guardian Ad Litem.*

*Janet K. Ledbetter for respondent-appellant Susan Dhermy.*

HUNTER, Judge.

Susan Dhermy ("respondent") appeals from an order terminating her parental rights to her daughter, "J.D." (d.o.b. 25 February 1991). For the reasons stated herein, we affirm.

On 25 September 2000, the Buncombe County Department of Social Services ("BCDSS") filed a juvenile petition alleging that J.D. was an abused and neglected juvenile. The events that occurred prior to the filing of the petition were as follows.

On 28 August 1996, BCDSS received a child protective services report ("CPS report") stating that respondent had taken J.D. (then four years old) to an emergency room claiming that the child's fourteen-year-old half-brother, Michael Dhermy ("Michael"), had raped her. Although a medical examination did not indicate the presence of any abnormality of her hymen, J.D. began seeing a therapist in connection with the alleged sexual abuse.

On 17 January 1997, BCDSS received a report from J.D.'s therapist that J.D. stated during a therapy session that Michael played with her vaginal area. Thereafter, respondent acknowledged that her son was a sexual offender and needed to be placed outside the home to protect J.D. However, shortly after out-of-home placement was located for Michael, respondent's husband and J.D.'s step-father, John Dhermy ("Dhermy"), returned Michael to the family home when respondent was hospitalized for psychological problems.

The juvenile court proceeded with an action against Michael for the sexual assault of J.D. The court was ultimately unable to adjudicate Michael as a sexual offender because J.D. and respondent recanted their previous statements, and Dhermy and Michael denied that J.D. had been sexually abused. Without any clear evidence, Michael was only ordered to (1) complete a sex offender specific evaluation, and (2) be placed outside the Dhermy home. Thus, the Dhermys placed another trailer next to their trailer for Michael to live in that was equipped with sensory devices to prevent him from leaving undetected. However, Michael regained access to his parents' home after his supervision by the juvenile court ended.

A third CPS report was received by BCDSS on 9 September 1997 concerning a violent fight between Dhermy and Michael. At that time, the social worker investigating the incident observed that Michael and J.D. were both living in the family home. Respondent threatened to kill anyone who tried to take Michael away.

On 9 October 1998, another CPS report was received by BCDSS in which J.D. disclosed to her therapist that both Michael and Dhermy had sexually abused her. The child made no further disclosures, and the matter was not substantiated.

Next, respondent reported to BCDSS on 11 April 2000 that her step-daughter and the step-daughter's husband, Tammera and Justin Abbott respectively ("Tammera" and "Justin"), smoked marijuana in the presence of their two-year-old son, Brandon. Respondent further reported that Tammera and Justin, who were living with respondent at that time, were involved in drug dealing and were being targeted for revenge because they had ripped off a drug dealer. When questioned, Justin admitted using marijuana. Tammera denied all drug usage, but later gave birth to another son on 28 July 2000 who tested positive for marijuana.

The final event that led BCDSS to file a juvenile petition with respect to J.D. occurred on 24 September 2000 when Brandon was seriously burned while in the care of respondent. Respondent's initial story was that her step-grandchild had doused himself with lighter fluid and struck a match. However, after being advised that the evidence did not support her story, respondent accused J.D. of the incident. Although Brandon never specifically stated who burned him, he did state a number of times that "grandma matched me." Thus, the preliminary results of the investigation implicated respondent as the main suspect.

Following the filing of the juvenile petition, BCDSS obtained an order for non-secure custody of J.D. on 28 September 2000. J.D. underwent a medical evaluation on 26 October 2000 which indicated abnormalities of her hymen that were not present in J.D.'s 1996 medical evaluation. The evaluating physician opined that the abnormalities suggested sexual abuse.

By order filed 11 January 2001, J.D. was adjudicated a physically and sexually abused child and a neglected juvenile in that respondent and Dhermy had "created or allowed to be created a substantial risk of serious physical injury to the child by other than accidental means . . . ." The court ordered custody of J.D. to remain with BCDSS and that a psychological evaluation of both parents and J.D. be performed.

On 4 April 2001, a permanency planning and review hearing was held. At the hearing, the court found that (1) respondent had been suffering from significant mental health issues at least since August of 1999, (2) J.D. had to be moved from her previous foster home after BCDSS received information that respondent had threatened to take the child and run to Canada, and (3) J.D. continued to be at risk if

returned to her parents' care because they continued to deny responsibility for her neglect and abuse. The court concluded that BCDSS be relieved of reunification efforts and that the permanent plan be changed to adoption.

On 27 August 2001, BCDSS filed a petition to terminate respondent's parental rights on the grounds of neglect and juvenile dependency. Prior to the hearing, respondent told BCDSS social workers that "she had separated from John Dhermy and that she believed that he had been sexually abusing [J.D.], and had thought so for a number of years. The respondent mother gave no explanation why she had failed to protect [J.D.,]" but claimed that she would not be reconciling with Dhermy.

The termination of parental rights hearing was held on 25-28 March 2002. At the start of the hearing, BCDSS voluntarily dismissed the termination of parental rights action against Dhermy, as Dhermy had "no parental rights to terminate, as he [wa]s neither the biological father nor the legal father[]" of J.D. During the hearing, evidence was offered regarding the likelihood that respondent was responsible for setting Brandon on fire, respondent's prior and continuing mental health problems, and the Dhermy family's extensive and troublesome history, most of which evidenced that J.D. had been sexually abused and neglected. As to J.D. being sexually abused, respondent testified that she did not believe Michael "was dangerous or a threat to [J.D.], and that [respondent's] problems were limited to bad choices she made." She further testified as to her belief that Dhermy had sexually abused J.D. However, despite respondent's earlier claim that the two were separated and would not be reconciling, the court took notice that Dhermy and respondent attended court together every day during the hearing and that her apartment was in close proximity to where Dhermy was living. Based on all the evidence, the court concluded there was

> clear, cogent and convincing evidence that grounds exist to terminate the parental rights of the respondent mother pursuant to N.C.G.S. 7B-1111(a)(1) in that she had neglected the minor child when the child came into the custody of the Department, she has continued to neglect the child during the entire time the child has been in the custody of [BCDSS], and there is a probability of the repetition of neglect if the minor child was returned to her care as the respondent mother has failed to correct the conditions which led to the abuse and neglect.

Therefore, the trial court determined it would be in J.D.'s best interests to terminate respondent's parental rights. Respondent appeals.

## I.

[1] By her first assignment of error, respondent argues the trial court committed reversible error by not appointing a guardian *ad litem* to represent her as statutorily required when juvenile dependency is alleged as a ground for termination. We disagree.

Subsection 7B-1111(a)(6) of our General Statutes provides, *inter alia*, that the court may terminate parental rights upon a finding that "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6) (2001). In cases "[w]here it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6)[,]" our statutes require that a guardian *ad litem* be appointed to represent the parent. N.C. Gen. Stat. § 7B-1101(1) (2001). Failure to meet this requirement results in remand of the case to the trial court for appointment of a guardian *ad litem*, as well as a rehearing. *In re Richard v. Michna*, 110 N.C. App. 817, 431 S.E.2d 485 (1993).

Here, BCDSS alleged Subsection 7B-1111(a)(6) as one of two grounds by which to terminate respondent's parental rights. In BCDSS' brief to this Court, it acknowledges that a guardian *ad litem* was not appointed for respondent as required by statute. However, BCDSS asserts *Richard* is distinguishable from the present case because, unlike the facts in *Richard*, BCDSS only argued and the trial court ultimately terminated respondent's parental rights pursuant to Subsection 7B-1111(a)(1) which requires no appointment of a guardian *ad litem*. This Court has held that "[a] valid finding on one statutorily enumerated ground is sufficient to support an order terminating parental rights." *In re Stewart Children*, 82 N.C. App. 651, 655, 347 S.E.2d 495, 498 (1986). Thus, although BCDSS should have formally dismissed Subsection 7B-1111(a)(6) as a ground for termination prior to the hearing, respondent was not prejudiced by this error since it was not pursued by BCDSS at the hearing or found as a ground for termination by the trial court.

II.

**[2]** Next, respondent assigns error to the trial court terminating her parental rights based on neglect. In addressing this assignment of error in her brief, respondent takes specific exception to approximately half of the court's fifty findings of fact despite having made a broadside exception to those findings in the record. The scope of appellate review is limited to issues presented by assignments of error in the record on appeal and, if one of those issues includes a broadside exception, it "does not present for review the sufficiency of the evidence to support the entire body of the findings of fact." *In re Beasley*, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). Therefore, since respondent only brought forth a broadside exception in the record, our review is limited to whether the facts support the court's judgment. *See Hicks v. Russell*, 256 N.C. 34, 39, 123 S.E.2d 214, 218 (1961). We hold that the facts do support the judgment.

Pursuant to Subsection 7B-1111(a)(1), a court may terminate parental rights upon a finding that a juvenile is a neglected juvenile. A "neglected juvenile" is defined as:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2001). If concluding that a juvenile is neglected, the trial court must enter a termination order that is "based on an independent determination of existing neglect or a determination that conditions exist which will in all probability precipitate a repetition of neglect." *Stewart Children*, 82 N.C. App. at 654, 347 S.E.2d at 497. All findings of fact in the judgment substantiating the termination of parental rights for neglect under either of these bases must be supported by clear, cogent, and convincing evidence. *See* N.C. Gen. Stat. § 7B-1109(f) (2001). If the termination is supported by such evidence, the trial court's findings are binding on appeal, even if there is evidence to the contrary. *In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988).

The court's findings of fact in the instant case clearly established that J.D. was neglected by respondent over a four-year period. These

findings were based on and supported by substantial documentation (CPS reports, medical evaluations, and psychological evaluations), which the court adequately summarized as follows:

> The minor child was sexually abused and neglected in the mother's home, the respondent mother was aware of this sexual abuse, and the respondent mother failed to protect her child from this abuse and neglect. The respondent mother help[ed] create the environment where this child was abused and neglected, and then did not protect this child, nor continue therapy for this child after she has been repeatedly sexually abused.

Moreover, the findings of fact supported the probability of the repetition of neglect if J.D. is returned to respondent's care. The court found that "respondent mother continues to deny and/or minimize her responsibility for the abuse and neglect of this child[]" in that respondent (1) does not believe that Michael is a threat to J.D., (2) apparently retains a close relationship with Dhermy, and (3) does not acknowledge the extent of her own psychological problems and their effect on J.D.

Accordingly, the court's termination of respondent's parental rights based on neglect was supported by clear, cogent, and convincing evidence.

### III.

[3] Next, respondent assigns error to the trial court's failure to recognize the purpose and legislative intent of pertinent statutes regarding the severance of a parent-child relationship. We disagree.

This Court has held that one of the essential aims of the Juvenile Code "is to reunite the parent(s) and the child, after the child has been taken from the custody of the parent(s)." *In re Shue*, 311 N.C. 586, 596, 319 S.E.2d 567, 573 (1984). However, our Legislature has recognized that reunification may not always be a viable option. Thus, the "Abuse, Neglect, Dependency" subchapter of the Juvenile Code provides "standards for the removal, when necessary, of juveniles from their homes [as well as] for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents." N.C. Gen. Stat. § 7B-100(4) (2001). When the trial court determines that conditions such as abuse and neglect exist, our statutes provide for the issuance of "an order terminating the parental rights of [a] parent with respect

to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C. Gen. Stat. § 7B-1110(a) (2001).

Based on the evidence in this case, the court concluded that J.D. was a neglected juvenile and terminated respondent's parental rights. By enacting Sections 7B-100 and 7B-1110, the Legislature sought to protect juveniles like J.D. and recognized that such protection may include the removal of those juveniles from their homes and the termination of parental rights. Thus, the court did not fail to consider the purpose and legislative intent of these statutes when it terminated respondent's parental rights after finding clear, cogent, and convincing evidence that supported neglect as a ground for termination.

IV.

[4] Respondent also assigns error to the court's alleged use of the wrong standard in concluding that a ground existed to terminate her parental rights. It is well recognized that a trial court must affirmatively state in its judgment terminating parental rights that the allegations of the petition were proven by clear, cogent, and convincing evidence. *In re Church*, 136 N.C. App. 654, 525 S.E.2d 478 (2000). Here, the judgment did affirmatively state that the court concluded such evidence supported a finding of neglect as a ground for termination. However, respondent contends that only a preponderance of the evidence supported the court's conclusion, a standard which is less than that required to terminate parental rights. *See In re Montgomery*, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984). Nevertheless, having held in Part II of this opinion that there was clear, cogent, and convincing evidence by which the court could have found neglect as a ground for termination, respondent's argument is without merit.

V.

[5] By her final assignment of error, respondent argues the trial court abused its discretion in concluding that it was in the best interests of J.D. to terminate respondent's parental rights without conducting the two phases of a termination of parental rights proceeding. We disagree.

Adjudication and disposition are the two phases involved in a termination of parental rights proceeding. At the adjudication phase, the

petitioner has the burden of proving there is clear, cogent, and convincing evidence supporting at least one statutory ground for termination. *In re McMillon*, 143 N.C. App. 402, 408, 546 S.E.2d 169, 173-74, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). Upon finding such a ground, the trial court proceeds to the disposition phase to determine whether it is in the best interests of the child to terminate parental rights. *Id.* at 408, 546 S.E.2d at 174.

In the instant case, respondent essentially contends that the trial court erred in not having separate hearings for adjudication and disposition. Yet, our statutes and case law have set forth no requirement that the two phases be conducted during separate hearings. *In re White*, 81 N.C. App. 82, 344 S.E.2d 36 (1986). Thus, having previously concluded that the court's findings of fact were supported by clear, cogent, and convincing evidence, we need now only determine whether those findings supported the court's conclusion that terminating parental rights was in the juvenile's best interests. *See McMillon*, 143 N.C. App. at 408, 546 S.E.2d at 174.

The court made numerous findings regarding the extensive sexual abuse J.D. suffered at the hands of Michael and Dhermy. Respondent acknowledged awareness of the abuse, but did virtually nothing to protect J.D. from it. Further, the court found that respondent (1) lacked insight regarding her own significant mental health issues, (2) played a significant role in creating a neglectful and abusive home environment for J.D., and (3) had made minimal progress in correcting the issues that led to J.D.'s removal from the home. Therefore, the court did not abuse its discretion in concluding it was in J.D.'s best interests to terminate respondent's parental rights.

Affirmed.

Judges McGEE and CALABRIA concur.