IN THE MATTER OF: H. W., DOB: 11/12/1995; R. W., DOB: 2/23/1998

No. COA03-679

(Filed 6 April 2004)

**1. Child Abuse and Neglect— psychological testing of parents—willful noncompliance**

The trial court did not err in a child abuse and neglect case by finding that respondent parents' noncompliance with court orders requiring psychological testing of the parents was willful and not due to their financial circumstances, and by ordering DSS to cease reunification efforts with respondents because: (1)

**IN RE H.W.**

[163 N.C. App. 438 (2004)]

respondent mother received disability payments from Social Security; (2) respondent father received no income, provided no explanation to the trial court as to why he did not work, and there was nothing in the record to indicate that respondent father was unable to work; and (3) evidence was presented that respondent mother was able to produce $600 to post bond when respondent father was arrested for larceny sometime after the psychological testing was ordered by the court, even though she claimed she borrowed the money from neighbors.

**2. Child Abuse and Neglect— reunification—findings of fact**

The trial court did not fail to make the requisite findings of fact as required by N.C.G.S. § 7B-907 in a child abuse and neglect case to support its order ceasing reunification efforts with respondent parents, because: (1) the trial court expressly designated its 20 August 2002 order as a regularly scheduled review and placed the matter on the 17 September 2002 calendar for a permanency planning hearing, and thus, the trial court was not conducting, nor was it required to conduct, a permanency planning hearing as specified in N.C.G.S. § 7B-907 at that time; and (2) a trial court may order DSS to cease reunification efforts with a natural parent during a regularly scheduled review if it makes certain written findings of fact under N.C.G.S. § 7B-907(b), and the required written findings were made.

**3. Guardian and Ward— guardian ad litem—dependency—parent's substance abuse**

The trial court did not err in a child abuse and neglect case by failing to appoint a guardian ad litem for respondent father, because: (1) the trial court does not need to appoint a guardian ad litem under N.C.G.S. § 7B-602(b)(1) unless the petitioner specifically alleges dependency and the majority of the dependency allegations tend to show that a parent or guardian is incapable as the result of some debilitating condition listed in the statute of providing for the proper care and supervision of his child; (2) in this case, the petition did not specifically allege dependency as a result of respondent's substance abuse, nor did the majority of the petition's allegations against respondent focus on his alleged substance abuse as the cause of the children's dependency; and (3) the majority of the dependency allegations in this case focused on respondent's alleged abuse and neglect as exhibited by his noncompliance with court-ordered domestic violence counseling and a pattern of abuse against his wife and other chil-

dren, which did not tend to show incapacity by respondent as defined by the statute.

### 4. Guardian and Ward— guardian ad litem—timely appointment—incompetent person

The trial court did not err in a child abuse and neglect case by allegedly failing to make a timely appointment of a guardian ad litem for respondent mother, because: (1) N.C.G.S. § 7B-602(b)(1) does not require reversal where the court makes an appointment sometime after the actual commencement of the action unless that appointment is so untimely that it results in prejudice to the incompetent person's case; and (2) assuming arguendo that N.C.G.S. § 7B-602(b)(1) required the appointment of a guardian ad litem for respondent in this case, the trial court's one and a half month delay in appointing a guardian ad litem did not cause prejudice to respondent's case.

Appeals by respondent mother and respondent father from order entered 1 November 2002 by Judge T.S. Royster, Jr. in Davidson County District Court. Heard in the Court of Appeals 1 March 2004.

*Davidson County Department of Social Services, by Staff Attorney Charles E. Frye, III, for petitioner-appellee.*

*Nancy R. Gaines, for respondent-appellant mother.*

*Katherine Chester, for respondent-appellant father.*

*Laura B. Beck, for the Guardian ad Litem.*

MARTIN, Chief Judge.

Respondent-mother and respondent-father are the parents of H.W., born 12 November 1995, and R.W., born 23 February 1998. On 22 June 2001, the Davidson County Department of Social Services ("DSS") filed a petition alleging the minor children were neglected and dependent. Nonsecure custody of the children was given to DSS, and on 31 August 2001, following hearings conducted on 24 July, 7 August, and 13 August 2001, the trial court found, *inter alia*, that on 18 April 1991, respondent-father had been convicted of feloniously abusing the twenty-month-old son of his girlfriend resulting in the child suffering a closed head injury, brain damage, numerous bruises on his body, and permanent paralysis; that respondent-mother suffered domestic violence from respondent-

**IN RE H.W.**

[163 N.C. App. 438 (2004)]

father and had mental limitations which caused her to receive disability payments; and that respondent-father suffered from blackouts, uncontrollable bouts of anger, and loss of memory. The trial court concluded the children were living in an environment injurious to their welfare and adjudicated the children to be neglected. Respondents were granted supervised visitation with the children for one hour per week and the matter was placed on the 27 August 2001 calendar for disposition.

Several hearings were scheduled and continued over the next four months. During this time, respondents underwent counseling and participated in supervised visitation with the children. In addition, DSS provided services and recommended treatment options to respondents in an effort to reunite the family.

On 25 January 2002, DSS filed additional petitions alleging the children were abused, neglected, and dependent. In light of these newly filed petitions, disposition of the 13 August 2001 adjudication of neglect was continued several more times. The record does not indicate whether disposition was ever conducted for the 13 August 2001 adjudication of neglect.

On 19 February 2002, the court heard and denied a motion by respondent-mother for substitute counsel. On 11 March 2002, the court allowed a motion by respondent-mother's attorney to withdraw and appointed a Guardian ad Litem for respondent-mother, due to her cognitive limitations.

On 17 May 2002, after hearings conducted on 25 April, 9 May, and 17 May 2002, the trial court entered adjudication and disposition orders for the 25 January 2002 petitions. It found, *inter alia*, that respondent-father continued to deny responsibility for the previous felony child abuse conviction and for any acts of domestic violence against respondent-mother; that the juvenile, R.W. had been observed eating feces and that he claimed that his "Da" would put it in his mouth whenever he had an accident in his pants; that the juvenile, H.W., would become sick and wet her bed almost every time prior to visitation with respondents; that a Child Mental Health Evaluation Program had been completed and it concluded that the children had been physically and emotionally abused by respondents and that respondents lacked the insight, motivation, and ability to work with professionals to correct the problem; and that respondent-mother, due to her cognitive limitations, was unable to protect her children, intervene on their behalf, or be truthful with professionals about

what was occurring in the home. The trial court adjudicated the juvenile, R.W., to be abused and neglected, and it adjudicated the juvenile, H.W., to be neglected. Visitation with respondent-parents was ordered to be "at the discretion of the juvenile's (sic) therapists." Respondent-father was ordered to complete the Abusers' Intervention Program and undergo a sexual disorders specific evaluation; respondent-mother was ordered to complete a full-scale psychological evaluation; and both parents were ordered to cooperate with DSS in locating funds to pay for the court ordered evaluations. The permanent plan of care for the children was decreed to be a concurrent plan of reunification with respondent-parents and guardianship with a relative. No appeal was taken from that order.

On 20 August 2002, the trial court conducted a regularly scheduled review of the matter and considered a motion from respondent-mother for visitation with the children. The trial court found, *inter alia*, that respondent-parents had wilfully failed to complete the previously ordered evaluations; that the children's circumstances improved significantly after visitation with the respondent-parents ceased on 12 March 2002; and that efforts to reunite the family were inconsistent with the children's health, safety, and need for a permanent home within a reasonable period of time. It denied respondent-mother's motion for visitation with the children and ordered that the permanent plan of care for the children be changed to a concurrent plan of guardianship with a relative and termination of parental rights and adoption. The matter was placed on the 17 September 2002 calendar for a permanency planning hearing. Respondents appeal from this order.

Respondents present arguments supporting four of the ten assignments of error contained in the record on appeal. The remaining assignments of error are deemed abandoned. N.C. R. App. P. 28(a).

[1] In their first and fourth assignments of error, respondents argue the trial court's finding of fact #4 was not supported by competent evidence in the record and the trial court erred when it ordered DSS to cease reunification efforts with respondents based on their financial inability to comply with court orders. Because we find competent evidence in the record to support the trial court's finding of fact #4 that respondents' noncompliance with court orders was not due to their financial circumstances, we find no error in either respect.

**IN RE H.W.**

[163 N.C. App. 438 (2004)]

A trial court's findings of fact are conclusive if supported by competent evidence in the record. *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991). Finding of fact #4 states:

> 4. That counsel for Respondent-Mother made a motion at this hearing that the Davidson County Department of Social Services be required to pay for court ordered psychological testing of the Respondent-Parents due to their indigency. The Court does not accept their excuses for the failure to obtain such evaluations and notes that the Respondent-Father does not work; is not receiving disability; and was able to borrow funds from neighbors in order to post bond to be released on a pending charge of felony larceny. The Court finds that the failure of the Respondent-Parents to obtain said evaluations is not due to their financial circumstances but rather to their unwillingness to either cooperate with the Davidson County Department of Social Services or to comply with the directives of this Court.

Respondents claim their indigence prevented them from complying with the court ordered psychological testing, which was estimated to cost approximately $600 for respondent-father and between approximately $550 and $750 for respondent-mother. Ms. Gould, the DSS social worker, testified that she had worked to find an agency who would conduct the testing for free, but was unable to do so. She testified that respondents made no efforts to assist in this endeavor. Evidence received at hearing indicated that respondent-mother received disability payments from Social Security due to her mental limitations, which she used to support herself and respondent-father. Respondent-father received no income and provided no explanation to the trial court, upon inquiry, as to why he did not work. Furthermore, there is nothing in the record to indicate that respondent-father is unable to work. The trial court found it significant that when respondent-father was arrested for larceny in Guilford County sometime after the psychological testing was ordered by the court, respondent-mother was able to produce $600, which she claims she borrowed from neighbors, to post bond. The evidence was sufficient to support the trial court's finding that respondent-parents wilfully failed to comply with a court order and that such noncompliance was not due to their financial circumstances. Accordingly, we overrule respondents' assignments of error.

[2] Next, respondents argue the trial court did not make the requisite findings of fact as required by G.S. § 7B-907 to support its order ceas-

ing reunification efforts with respondent-parents. This argument has no merit.

N.C. Gen. Stat. § 7B-907(a) (2003) requires the trial court to conduct a permanency planning hearing within 12 months of an initial order removing custody from a parent or guardian. The statute defines a permanency planning hearing as follows:

> (a) In any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody, and the hearing may be combined, if appropriate, with a review hearing required by G.S. 7B-906. The purpose of the permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time.

*Id.*

At the conclusion of the permanency planning hearing, if the juvenile is not returned home, the trial court must consider the following criteria and make written findings regarding those that are relevant:

> (1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

> (2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

> (3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

> (4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

> (5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

N.C. Gen. Stat. § 7B-907(b) (2003).

In this case, the trial court expressly designated its 20 August 2002 order as a regularly scheduled review and placed the matter on the 17 September 2002 calendar for a permanency planning hearing. Thus, the trial court was not conducting, nor was it required to conduct, a permanency planning hearing as specified in G.S. § 7B-907 at that time. Instead, the court was conducting a review hearing as required by G.S. § 7B-906. N.C. Gen. Stat. § 7B-906 (2003) (requiring regularly scheduled reviews by the trial court whenever custody is removed from a parent or guardian).

A trial court may order DSS to cease reunification efforts with a natural parent during a regularly scheduled review if it makes written findings of fact that:

(1) Such [reunification] efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time;

(2) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances as defined in G.S. 7B-101;

(3) A court of competent jurisdiction has terminated involuntarily the parental rights of the parent to another child of the parent; or

(4) A court of competent jurisdiction has determined that: the parent has committed murder or voluntary manslaughter of another child of the parent; has aided, abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of the child or another child of the parent; or has committed a felony assault resulting in serious bodily injury to the child or another child of the parent.

N.C. Gen. Stat. § 7B-507(b) (2003). The required findings were made by the trial court in its order and after careful review, we hold that such findings are supported by competent evidence in the record. Respondents' assignment of error is overruled.

Finally, respondents argue the trial court erred in failing to appoint a guardian ad litem for the respondent-father, and failing to

make a timely appointment of a guardian ad litem for respondent-mother pursuant to G.S. § 7B-602(b)(1). We disagree.

**[3]** Respondents first argue that G.S. § 7B-602(b)(1) required the appointment, *sua sponte*, of a guardian ad litem for respondent-father in this case. N.C. Gen. Stat. § 7B-602(b)(1) (2003) states that where a petition alleges that a juvenile is abused, neglected, or dependent:

> (b) In addition to the right to appointed counsel set forth above, a guardian ad litem shall be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent in the following cases:
>
> > (1) Where it is alleged that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101 in that the parent is incapable as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile[.]

This provision was enacted in 2001 and is applicable to actions filed on or after 1 January 2002. 2001 N.C. Sess. Laws 2001-208, s. 2. When construing the meaning of a newly enacted statute, our Supreme Court stated in *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993) (citations omitted):

> [T]he Court must first ascertain the legislative intent to assure that the purpose and intent of the legislation are carried out. To make this determination, we look first to the language of the statute itself. If the language used is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language.

Respondents appeal from an order reviewing the disposition of juvenile petitions filed on 25 January 2002. The petitions alleged that the children were dependent juveniles as defined by G.S. § 7B-101 in that they were abused and neglected by respondents. There is no allegation in the petitions that the children were dependent "as the result of [respondent-father's] substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition. . . ." N.C. Gen. Stat. § 7B-602(b)(1) (2003). However, the neglect allegations do contain an allegation of substance abuse by respondent-father.

Respondent-father argues that these allegations are sufficient to trigger the appointment of a guardian ad litem pursuant to G.S. § 7B-602(b)(1). We first note that G.S. § 7B-602(b)(1) is narrow in scope and does not require the appointment of a guardian ad litem in every case where dependency is alleged, nor does it require the appointment of a guardian ad litem in every case where substance abuse or some other cognitive limitation is alleged. To be sure, we look to the language of the statute itself which requires the appointment of a guardian ad litem only in cases where (1) it is alleged that a juvenile is dependent; and (2) the juvenile's dependency is alleged to be caused by a parent or guardian being "*incapable* as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile." N.C. Gen. Stat. § 7B-602(b)(1) (2003) (emphasis added). Thus, a trial court need not appoint a guardian ad litem pursuant to G.S. § 7B-602(b)(1) unless (1) the petition specifically alleges dependency; and (2) the majority of the dependency allegations tend to show that a parent or guardian is incapable as the result of some debilitating condition listed in the statute of providing for the proper care and supervision of his or her child. *See In re Estes*, 157 N.C. App. 513, 518, 579 S.E.2d 496, 499, *disc. review denied*, 357 N.C. 459, 585 S.E.2d 390 (2003) (interpreting an analogous provision for the appointment of a guardian ad litem at a termination of parental rights proceeding).

In this case, the petition did not specifically allege dependency as a result of respondent-father's substance abuse, nor did the majority of the petition's allegations against respondent-father focus on his alleged substance abuse as the cause of the children's dependency. Rather, the majority of the dependency allegations in this case focused on the respondent-father's alleged abuse and neglect as exhibited by his noncompliance with court-ordered domestic violence counseling and a pattern of abuse against his wife and other children. Such allegations do not tend to show incapacity by respondent-father as defined by the statute and thus, G.S. § 7B-602(b)(1) did not require the appointment of a guardian ad litem for respondent-father in this case.

[4] Respondents next argue the trial court erred by delaying the appointment of a guardian ad litem for respondent-mother pursuant to G.S. § 7B-602(b)(1) and that such delay resulted in prejudice to her. Assuming, *arguendo*, that G.S. § 7B-602(b)(1) required the appointment of a guardian ad litem for respondent-mother in this case, we

conclude the trial court's one and a half month delay in appointing a guardian ad litem was not prejudicial to her and thus, reject respondents' argument.

N.C. Gen. Stat. § 7B-602(b)(1) (2003) states "a guardian ad litem shall be appointed in accordance with the provisions of G.S. [§] 1A-1, Rule 17." Rule 17 directs that "[w]hen an insane or incompetent person is defendant and service by publication is not required," a guardian ad litem should be appointed for that person "prior to or at the time of the commencement of the action." N.C. Gen. Stat. § 1A-1, Rule 17(c)(4) (2003).

We first must determine whether failure to appoint a guardian ad litem prior to or at the commencement of the action pursuant to Rule 17 is prejudicial error *per se. See Richard v. Michna,* 110 N.C. App. 817, 822, 431 S.E.2d 485, 488 (1993) (holding that failure to comply with the clear mandate of a statute is prejudicial error *per se*). While the appointment of a guardian ad litem is clearly mandatory under G.S. § 7B-602(b) and thus, failure to appoint a guardian ad litem in any appropriate case is deemed prejudicial error *per se, see In re Estes,* 157 N.C. App. 513, 515, 579 S.E.2d 496, 498, *disc. review denied,* 357 N.C. 459, 585 S.E.2d 390 (2003) (holding that reversal was required where a trial court failed to appoint a guardian ad litem at a termination of parental rights proceeding pursuant to an analogous statutory provision), we find that the clear mandate of the statute does not require reversal where the court makes an appointment sometime after the actual commencement of the action unless that appointment is so untimely that it results in prejudice to the incompetent person's case.

In this case, the petition alleging abuse, neglect, and dependency was filed on 25 January 2002 and at that time, respondent-mother was represented by counsel. A guardian ad litem was not appointed for respondent-mother until 11 March 2002. During the time between the filing of the petition and the appointment of a guardian ad litem, no proceedings occurred except a motion by respondent-mother for substitute counsel which was heard and denied by the trial court. Before the adjudication and disposition hearings held on 25 April, 9 May, and 17 May 2002, and the regularly scheduled review hearing, from which respondent appeals, held on 20 August 2002, a guardian ad litem had been appointed and appeared with respondent-mother at every stage. Respondents do not contend, nor is there any evidence in the record to show, that respondent-mother was not adequately assisted by her guardian ad litem at these hearings.

From this evidence, we are persuaded that respondent-mother was adequately represented by the guardian ad litem at every critical stage of the case. Thus, the one and a half month delay in appointing a guardian ad litem for respondent-mother did not cause prejudice to her case. Accordingly, we overrule respondents' assignment of error.

Affirmed.

Judges TIMMONS-GOODSON and LEVINSON concur.