IN RE T.B.K.

[166 N.C. App. 234 (2004)]

━━━━━━━━━━━━

IN RE: T.B.K.

No. COA03-1286

(Filed 7 September 2004)

**Termination of Parental Rights—addicted parent—guardian ad litem for parent—required**

A termination of parental rights order was reversed and remanded for the appointment of a guardian ad litem for the parent and a rehearing where there were allegations and findings about respondent's drug use but a guardian ad litem was not appointed for her. The trial court must appoint a guardian ad litem when a motion to terminate alleges dependency due to incapability of the parent to provide proper care as spelled out in N.C.G.S. § 7B–1111(6) and that incapability is the result of one of the conditions enumerated in N.C.G.S. § 7B–1101(1).

Appeal by respondent from order entered 27 February 2003 by Judge Donna H. Johnson in Cabarrus County District Court. Heard in the Court of Appeals 10 June 2004.

*Kathleen Arundell Widelski for petitioner-appellee.*

*Katharine Chester for respondent-appellant.*

**IN RE T.B.K.**

[166 N.C. App. 234 (2004)]

THORNBURG, Judge.

Respondent is the mother of the minor child, T.B.K. T.B.K. was born on 16 June 2000. In January 2001, the Cabarrus County Department of Social Services ("DSS") received a neglect report alleging that respondent was addicted to drugs, on the run with her boyfriend, involved in illegal activities and generally unable to care for T.B.K. On 7 April 2001, respondent and DSS entered a case plan to address the issues raised by the neglect report. Under the case plan respondent was supposed to attend NA and/or AA meetings, submit to random drug screens, attend parenting classes and address other concerns about her home life. While respondent did receive a substance abuse evaluation, she failed to attend any substance abuse group meetings and admitted to continued drug use. On 13 March 2001, respondent was charged with driving while impaired after she flipped her car over with T.B.K. in the car. Respondent was also charged with possession of cocaine on 19 April 2001.

Respondent and DSS entered into a substantially similar case plan on 3 July 2001. On 14 August 2001, respondent submitted to a drug screen and tested positive for cannabinoid and cocaine. On 15 August 2001, DSS filed a petition alleging that respondent and T.B.K.'s father neglected T.B.K. DSS received non-secure custody of T.B.K. on that date as well. On 10 September 2001, respondent stipulated to a finding of neglect. The trial court ordered respondent to submit to a psychological evaluation, to submit to a substance abuse assessment, to attend a parenting course, to maintain stable employment and housing and to abstain from the abuse of alcohol and controlled substances. The trial court also ordered that T.B.K. remain in the custody of DSS.

Initially, respondent made "substantial progress" in addressing the issues which led to T.B.K.'s placement with DSS and the permanent plan for T.B.K. was reunification with respondent. However, shortly after the birth of respondent's second child, J.C., the court began to have concerns about respondent's progress. At the permanency planning review hearing, on 14 March 2002, the trial court found that respondent was no longer making progress on her case plan goals. Respondent refused to submit to drug screenings on 29 January 2002 and 1 March 2002. Respondent missed three scheduled visits with T.B.K. and failed to be at the hospital while T.B.K. was undergoing surgery. DSS was having difficulty contacting respondent due to her phone being lost or disconnected. Respondent had not been in contact with her substance abuse program for two weeks.

At the 9 May 2002 permanency planning review hearing, the trial court found that respondent had made no progress in her efforts to regain custody of T.B.K. Respondent failed to provide proof of her attendance at any AA/NA meetings, she failed to attend substance abuse treatment, she failed to maintain contact with DSS as ordered, she missed numerous scheduled visits with T.B.K., she failed to submit to drug screens, she was unemployed after having been fired from her job and she admitted to the use of controlled substances both before and after the birth of her second child. Respondent was arrested on 6 April 2002 and was still in custody at the time of the May review.

DSS filed a motion to terminate respondent's parental rights on 30 September 2002. A hearing on the motion was conducted on 16 January 2003 and 14 February 2003. Respondent's parental rights were terminated in an order entered on 27 February 2003. Respondent appeals.

Respondent argues on appeal: (1) that the trial court erred in terminating respondent's parental rights when she had not been appointed a guardian ad litem as required by N.C. Gen. Stat. § 7B-1101; (2) that the trial court erred in failing to hold the termination hearing within ninety days as required by statute; (3) that the trial court erred in failing to hold a bifurcated hearing; (4) that the trial court erred in terminating respondent's parental rights where there was no timely appointment of a guardian ad litem for T.B.K. and no evidence to show that any services were performed by the guardian ad litem; and (5) that there was not clear, cogent and convincing evidence of any of the grounds for termination found by the trial court. After a careful review of the record and briefs, we agree that the trial court erred in not appointing a guardian ad litem to respondent. We reverse and remand.

In the motion in the cause to terminate respondent's parental rights, DSS alleged that grounds to terminate existed under several provisions of N.C. Gen. Stat. § 7B-1111. One of the alleged grounds is that respondent is incapable of providing for the proper care and supervision of the juvenile such that the juvenile is a dependent juvenile within the meaning of N.C. Gen. Stat. § 7B-101 and that there is a reasonable probability that such incapability will continue for the foreseeable future. While the motion does not specifically cite the statute, the language of the motion tracks N.C. Gen. Stat. § 7B-1111(6), which spells out when a parent shall be found to

**IN RE T.B.K.**

[166 N.C. App. 234 (2004)]

be "incapable of providing for the proper care and supervision of the juvenile." N.C. Gen. Stat. § 7B-1111(6) (2003).

The mandates of N.C. Gen. Stat. § 7B-1101 must be followed when N.C. Gen. Stat. § 7B-1111(6) is invoked. N.C. Gen. Stat. § 7B 1101 provides, in pertinent part:

> In addition to the right to appointed counsel set forth above, a guardian ad litem shall be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent in the following cases:
>
> > (1) Where it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6), and the incapability to provide proper care and supervision pursuant to that provision is the result of *substance abuse*, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition.

N.C. Gen. Stat. § 7B-1101 (2003) (emphasis added). Thus, where a motion alleges dependency due to incapability as spelled out in N.C. Gen. Stat. § 7B-1111(6), and the incapability is the result of one of the conditions enumerated in N.C. Gen. Stat. § 7B-1101(1), the trial court must appoint a guardian ad litem. Respondent argues that her incapability was alleged in the motion to be the result of substance abuse, one of the conditions enumerated in N.C. Gen. Stat. § 7B-1101(1). We agree based on the analysis *infra*, and thus the trial court erred in not appointing her a guardian ad litem.

DSS included the following factual allegations in the motion to support the alleged grounds for termination:

> The (CCDSS) investigation revealed that the mother was on the run with her boyfriend but recently left him. The mother admitted to using cocaine, marijuana and prescription drugs (Zanax, Oxycodone, Valium and Loratab). The mother admitted that her drug addiction was keeping her from caring for her child properly. She admitted to not interacting with her child for days at a time because she was so sick she can not get off the couch. The CCDSS substantiated neglect and the case was transferred to Case Management/Case Planning on March 8, 2001 to assist the mother in seeking treatment for her substance abuse problems.
>
> On March 13, 2001 the mother was driving under the influence with the child in the car and flipped the car over. The officer

IN RE T.B.K.

[166 N.C. App. 234 (2004)]

involved indicated that the child could have easily been killed. The mother admitted to the assigned social worker that she had drank [sic] four beers before driving with the child.

On April 6, 2001 the mother contacted CCDSS and stated she wanted to kill herself. She was taken to Northeast Medical Center and admitted to Stanly Memorial Behavioral Healthcare. The mother checked herself out on April 8, 2001.

The mother tested positive for marijuana at the child's birth. On April 7, 2001, the mother tested positive for cocaine and benzodiazepines while at Stanly Memorial. The mother tested positive for cocaine and marijuana on February 27, 2001 and May 11, 2001; and on July 2, 2001 the mother tested positive for marijuana.

On April 19, 2001 the mother was charged with possession of cocaine.

The mother secured an assessment from Piedmont Behavioral Healthcare in June but has failed to follow through with recommendations which included meeting with a counselor, attending a substance abuse group and attending NA/AA meetings.

At a review hearing on March 14, 2002, the court found that the mother had made some progress but there were areas of concern that needed to be addressed.

On May 9, 2002, the court found that [respondent] had failed to make reasonable progress in complying with the court-ordered Family Services Case Plan. [Respondent] had continued to use controlled substances and had failed to attend substance abuse treatment. The court changed the plan for the child to adoption.

On June 13, 2002 a permanency planning hearing was held. The court found that it was not possible for the child to return to his home within six months; that reasonable efforts to return the child to his own home were clearly futile or would be inconsistent with the child's health, safety and need for a safe permanent home within a reasonable period of time.

During the pendancy [sic] of this action, the mother was incarcerated and remains in the North Carolina Department of Corrections [sic] at this time of the filing of this motion.

. . . .

[Respondent] has contributed nothing towards the child's cost of care since August 15, 2001. The cost of the child's care since August 15, 2001 has been $1644.75.

The remaining factual allegations were in reference to the respondent-father. Six of the ten allegations make explicit reference to respondent's substance abuse issues. These allegations tend to show that DSS intended to rely upon respondent's substance abuse issues as the basis of her incapability to care for T.B.K.

This Court has held that the statutory language of N.C. Gen. Stat. § 7B-1101 expressly mandates that a guardian ad litem be appointed in cases where the motion alleges dependency due to one of the conditions listed in the statute. *In re Richard v. Michna*, 110 N.C. App. 817, 431 S.E.2d 485 (1993) (interpreting N.C. Gen. Stat. § 7A-289.23, now codified as N.C. Gen. Stat. § 7B-1101). Further, this Court has held that where the motion alleges dependency and the majority of the dependency allegations tend to show that a parent or guardian is incapable, as the result of some debilitating condition listed in the statute, of providing for the proper care and supervision of his or her child, that N.C. Gen. Stat. § 7B-1101 mandates that a guardian ad litem be appointed. *In re Estes*, 157 N.C. App. 513, 579 S.E.2d 496, *disc. review denied*, 357 N.C. 459, 585 S.E.2d 390 (2003). In both of these cases, the failure to meet this requirement for the appointment of a guardian ad litem resulted in remand of the case to the trial court for the appointment, as well as for a rehearing.

This Court has also reversed and remanded a case for the appointment of a guardian ad litem where the trial court did not find dependency but the motion sufficiently alleged dependency and evidence was presented regarding the respondent's relevant debilitating condition. *In re J.D.*, 164 N.C. App. 176, —— S.E.2d —— (4 May 2004) (03COA71-2), *disc. review denied*, 358 N.C. 732, —— S.E.2d —— (12 August 2004) (240P04). In *Richard*, this Court further held that though there was no evidence to suggest prejudice to the respondent due to the failure to appoint a guardian ad litem, that "the mandate of the statute must be observed, and a guardian ad litem must be appointed." *Richard*, 110 N.C. App. at 822, 431 S.E.2d at 488.

In the instant case, we find nothing in the record to indicate that respondent was appointed a guardian ad litem and petitioner admits this omission by the court in its brief. The motion clearly alleges dependency and most of the relevant factual allegations refer to respondent's substance abuse issues. Further, the trial court heard

evidence and made findings in the termination order concerning respondent's substance abuse issues. As such, it was error for the trial court to not appoint a guardian ad litem to respondent in this case.

We need not discuss respondent's other assignments of error due to our conclusion that the case must be remanded for the appointment of a guardian ad litem to respondent and rehearing. After careful consideration, we reverse and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

Judges HUDSON and GEER concur.