THORNBURG, Judge.
Respondent TTC appeals from an order terminating his parental rights with respect to juveniles JBC and CLC. For the reasons stated herein, we affirm the order of the trial court.
The pertinent facts and procedural history are as follows: Respondent is the biological father of JBC, born 24 November 1996, and CLC, born 1 August 1999. Pursuant to a report from a Florida social services agency alleging drug use and domestic violence, petitioner Yadkin County Department of Social Services ("DSS") initially became involved with the family on 15 October 2001. On 9 November 2001, DSS filed a petition alleging that the juvenileswere neglected in that they were living in an environment injurious to their welfare. The juveniles were adjudicated neglected as a result of a hearing on 26 November 2001 in Yadkin County District Court.
The underlying termination of parental rights petition was filed by petitioner on 23 April 2003. In reference to respondent's parental rights, the petition alleged three grounds for termination under N.C. Gen. Stat. § 7B-1111 (2003): 1) respondent neglected the juveniles as that term is defined in G.S. § 7B-101(15); 2) respondent is the father of children born out of wedlock and has not established paternity, or legitimated said children or provided any substantial support for them; and 3) respondent has willfully left his children in foster care for more than 12 months without showing that reasonable progress under the circumstances has been made in correcting those conditions which led to their removal. After a hearing on the matter, the trial court concluded that all three of these grounds existed and terminated respondent's parental rights. Respondent appeals.
Respondent brings forth four assignments of error for this Court's review. First, respondent argues that the trial court erred[1] by not conducting a separate dispositional hearing. However, the record reveals that respondent did not make any motion or lodge any objection at the termination hearing in reference tothis argument. Accordingly, this issue is not preserved for our review. N.C. R. App. P. 10(b)(1)(2003); see In re O.W., ___ N.C. App. ___, ___, 596 S.E.2d 851, 852 (2004) (holding that the respondent failed to preserve the argument that the trial court erred by consolidating the adjudicatory and dispositional hearings because the respondent did not object to DSS's motion to consolidate the hearings).
Respondent's next two assignments of error assert that the findings of fact are not sufficient to support the termination of respondent's parental rights and that the conclusions of law are not supported by evidence. However, these assignments of error do not address or identify specific findings of fact or conclusions of law. "A single assignment [of error] generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective." Wade v. Wade, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266 (1985), disc. review denied, 313 N.C. 612, 330 S.E.2d 616 (1985). As respondent failed to specifically assign error to any of the trial court's findings of fact supporting its order, those findings are deemed to be supported by competent evidence and are conclusive on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991); N.C. R. App. P. 10(c)(1) (2003). Accordingly, this Court is "left to determine whether the trial court's findings support its conclusion[s] of law." In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). After a careful review of the findings and conclusions in the termination order, we conclude that the trial court did not err in concluding that respondent neglected the juveniles pursuant to N.C. Gen. Stat. § 7B-1111(a)(1)(2003).
The trial court's order contains the following relevant findings:
The parents of these children had a history of domestic violence and drug use in the State of Florida dating from at least 1999 and were being investigated by authorities in that state when they moved with the children to Yadkin County in September or October of 2001; that on October 17, 2001, after receiving a report, a Social Worker . . . discovered that this family had recently come to Yadkin County from the State of Florida and had . . . moved to the Sleep Inn in Yadkinville; that the father was not employed but the mother was employed at the Sleep Inn and at a local restaurant and that the family had no transportation and only $150.00; that an offer to help arrange bus transportation back with other family members or transportation to a homeless shelter were refused, but they did accept help in relocation to Holcomb's Trailer Park in Yadkinville and both parents were tested for drugs; ... the father's [sic] tested positive for marijuana and both parents signed a Protection Plan to keep the children away from drug use; that on November 8, 2001 a Social Worker and Officer of the Yadkinville Police Department went to the family residence where the father, both children and another man were present and the residence had a strong odor of marijuana smoke and both drugs and drug paraphernalia were found; that the father was arrested . . .; that both parents refused to sign a Treatment Plan and the following day the Department of Social Services took custody pursuant to a non-secure Order; that on November 26, 2001, both children were adjudicated neglected children pursuant to G.S. 7B-101 (15), and the Court continued the legal and physical custody of said childrenwith the Yadkin County Department of Social Services.
That on January 30, 2002, the Court reviewed this case in the foster care placement of the children, and found that the father's Substance-Abuse Assessment resulted in a diagnosis of Cannabis Abuse and placed him in the high probability for chemical dependence classification and, a psychological evaluation reflected a recommendation of substance abuse treatment for the father; that the Court found that although the mother was making progress in accepting services offered by petitioner, the father was being less cooperative, and the Court directed a trial placement of the children with the mother if the father would agree and comply with specific requirements contained in the Court's Order.
That at the next Court Review on July 22, 2002, the Court found that the parents had failed to take advantage of the trial placement permitted in its prior Order, and that the father was in jail in Guilford County facing charges of Felonious Robbery with a Dangerous Weapon; that the Court further found that the father refused to be drug tested or complete his Family Services Case Plan; the Court relieved the petitioner from further reasonable efforts toward reunification.
That the case was again reviewed by the Court on November 4, 2002, and the father was still incarcerated awaiting trial; . . . .
That a Permanency Planning Review was held February 24, 2003, and the Court . . . found that it was in the best interests of these children to change the plan to termination of the rights of both parents, and the children's Guardian Ad Litem concurred in that change.
That prior to being released from reasonable efforts, the Yadkin County Department of Social Services had offered extensive services to both parents, but the father missed six out of twelve parenting classes offered to him, was removed from anger-management classes for failure to payfor the same, refused to give the social worker the names of his relatives who could provide family support or services, did not maintain regular employment or consistent housing for his family, disrupted his psychological evaluation so the same could not be completed, refused to make appointments for testing but was diagnosed to have mental problems for which medication was recommended but refused to follow up with taking that medication.
That even while incarcerated, the father only attempted to contact his children through the social worker one time, although he claims to have made several attempts through their mother who would not respond to his letters. . . . [A]lthough [respondent] has provided support for [the juveniles] in the past, [he] has not done so since they were removed from his custody in November, 2001.
We conclude that these findings support the trial court's conclusion that grounds exist for the termination of respondent's parental rights under N.C. Gen. Stat. § 1111(a)(1)(2003).
Under N.C. Gen Stat. § 7B-1111, the court may terminate parental rights upon a finding that the juvenile is a neglected juvenile. N.C. Gen. Stat. § 7B-1111(a)(1)(2003). The juvenile shall be deemed neglected if the court finds the juvenile to be a "neglected juvenile" within the meaning of N.C. Gen. Stat. § 7B-101. N.C. Gen. Stat. § 7B-101(15) defines "neglected juvenile" as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare . . . .
N.C. Gen. Stat. § 7B-101(15)(2003). Furthermore, "[w]here evidence of prior neglect is presented, `the trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect.'" In re Young, 346 N.C. 244, 250, 485 S.E.2d 612, 616 (1997)(quoting In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1997).
In the instant case, the trial court's findings of fact clearly indicate that the trial court considered evidence of both past neglect and the probability of the repetition of neglect. The above-quoted findings show that the juveniles lived in an injurious environment with a lack of proper supervision due to respondent's drug use, violence and unemployment. Furthermore, prior to his incarceration respondent actively resisted DSS's efforts to assist the family. After being incarcerated, respondent only made minimal efforts to contact his children. See Whittington v. Hendren (In re Hendren), 156 N.C. App. 364, 368, 576 S.E.2d 372, 375-76 (2003) (noting that "in determining whether neglect has occurred, the trial judge may consider the parent's failure to provide the personal contact, love, and affection that inheres in the parental relationship" and that "[i]ncarceration alone . . . does not negate a father's neglect of his child") (citations omitted).
Although respondent presented some contrary evidence and urged the trial court to make different inferences from the evidence, the trial court was entitled to find as it did. In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonableinferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject."). Accordingly, we conclude that the findings made by the trial court are sufficient to support the conclusion that respondent neglected the juveniles within the meaning of N.C. Gen. Stat. § 7B-101(15).
"A finding of any one of the enumerated termination grounds is sufficient to support the order of the trial court." In re Yocum, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403-04 (2003), aff'd per curiam, 357 N.C. 568, 597 S.E.2d 674 (2003). Accordingly, we need not address whether the trial court's findings support termination on another ground. This assignment of error is overruled.
Respondent's final argument is that the trial court erred in failing to appoint a guardian ad litem for respondent. Respondent asserts that because DSS and the trial court believed that respondent was suffering from substance abuse problems and "possibly other disorders," he was entitled to have a guardian ad litem appointed to represent his interests. Our juvenile code provides that a guardian ad litem shall be appointed to represent a parent in a termination hearing where it is alleged that a parent's rights should be terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(6)(2003), and the inability to provide proper care and supervision pursuant to that provision is the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or a similar condition. N.C. Gen. Stat. § 7B-1101 (2003). N.C. Gen. Stat. § 7B-1111(a)(6) is the provision of the juvenile code which provides for termination of parental rights when the parent is incapable of providing for the proper care and supervision of the juvenile such that the juvenile is a dependent juvenile. Thus, a trial court need not appoint a guardian ad litem pursuant to N.C. Gen. Stat. § 7B-1101 unless (1) the petition or motion to terminate parental rights alleges dependency and (2) the majority of the dependency allegations tend to show that a parent or guardian is incapable as the result of some debilitating condition listed in the statute of providing for the proper care and supervision of his or her child. In re H.W., 163 N.C. App. 438, 447, 594 S.E.2d 211, 216 (2004), disc. review denied, 358 N.C. 543, 599 S.E.2d 46 (2004)(interpreting an analogous provision for the appointment of a guardian ad litem at a termination of parental rights proceeding)(citing In re Estes, 157 N.C. App. 513, 518, 579 S.E.2d 496, 499, disc. review denied, 357 N.C. 459, 585 S.E.2d 390 (2003).
In the instant case none of the grounds in the juvenile petition alleged that the juveniles were dependent juveniles. Rather the grounds alleged in reference to respondent's rights were neglect, failure to legitimate the juveniles, and willfully leaving the juveniles in foster care for more than 12 months. As the petition did not allege dependency that is the result of respondent's substance abuse, mental retardation, mental illness, organic brain syndrome, or other similar cause or condition, thetrial court was not required to appoint a guardian ad litem for respondent. This assignment of error is overruled.
Affirmed.
Judges GEER and LEVINSON concur.
Report per Rule 30(e).

Several of respondent's assignments of error assert that the trial court committed plain error. We remind counsel that plain error review is not available in civil cases. N.C. R. App. P. 10(c)(4); see, e.g., Durham v. Quincy Mutual Fire Ins. Co., 311 N.C. 361, 367, 317 S.E.2d 372, 377 (1984).