IN THE MATTER OF: D.L., A.L.

No. COA03-1490

(Filed 19 October 2004)

**1. Appeal and Error— notice of appeal—failure of service— waiver**

DSS's participation in respondents' appeal waived any objection to failure of service of the notice of appeal. DSS does not argue that it never received service of appellate entries, the notice of the appointment of appellate counsel, or the proposed record on appeal, and does not contend that it was prejudiced by any failure by respondents to properly serve the notice of appeal.

**2. Child Abuse and Neglect— neglected juvenile—failure to appoint guardian ad litem for parent**

The failure to appoint a guardian for the mother in a neglected juvenile proceeding was not error where the petitions did not allege that the children were dependant juveniles and did not assert that the mother could not provide proper care as the result of a debilitating condition. N.C.G.S. § 7B-602(b)(1).

**3. Child Abuse and Neglect— neglected juveniles—permanency planning hearing—timeliness**

The trial court erred by not holding a permanency planning hearing within the statutory time limit (one year from the initial order), but the matter was reversed and remanded on other grounds. N.C.G.S. § 7B-907(a).

**4. Child Abuse and Neglect— neglected juveniles—permanency planning order—findings—not supported by evidence**

A permanency planning order was reversed and remanded where the court's findings were not supported by the evidence. Respondent, acting pro se, testified but did not address the permanency plan, and DSS offered only statements by its attorney (which are not evidence) and a DSS summary. Adopting the DSS summary was not sufficient to support the findings.

IN RE D.L., A.L.

[166 N.C. App. 574 (2004)]

**5. Child Abuse and Neglect— neglected juveniles—permanency planning hearing—tape of first hearing destroyed**

A father's constitutional rights were not violated by the destruction of tapes recorded at a prior hearing concerning his allegedly neglected children. Although the father contended that the second hearing was a continuation of the first and that evidence presented at the first was crucial to the permanency planning order, the permanency planning order was not reached until the second hearing. The father did not assign error or enter notice of appeal to the first order, and did not present a narration of the evidence or identify portions of the record to support his argument.

**6. Parent and Child— neglected juveniles—permanency planning order—findings—father's testimony**

A permanency planning order was not supported by the evidence where the court made no findings about the only evidence presented: the father's testimony that he had completed parenting classes, was paying child support, and had attempted to maintain visits with the child.

Appeals by respondent mother and respondent father from order entered 7 October 2002 by Judge Theodore S. Royster, Jr., in Iredell County District Court. Heard in the Court of Appeals 1 September 2004.

*Thomas R. Young, for petitioner-appellee Iredell County Department of Social Services.*

*Winifred H. Dillon, for respondent mother-appellant.*

*M. Victoria Jayne, for respondent father-appellant.*

TYSON, Judge.

Shevalo Laney ("Laney") and Edward Dewight Little ("Little") (collectively, "respondents") appeal from the trial court's order entered following a permanency planning hearing. We reverse the trial court's order as it applies to Laney's appeal, and reverse and remand as the order applies to Little's appeal.

I. Background

On 23 July 2001, Iredell County Department of Social Services ("DSS") filed a juvenile petition alleging that D.L. and A.L. (collec-

IN RE D.L., A.L.

[166 N.C. App. 574 (2004)]

tively, "the children") were neglected juveniles. Laney, mother of both minor children, and Little, father of D.L. and caretaker of A.L., were named respondents. The children were placed with their maternal grandfather, Edsel Laney ("grandfather"), on 26 July 2001. On 18 October 2001, both children were adjudicated to be neglected children. The trial court approved the children's placement with their grandfather.

On 2 March 2002, the trial court entered an order which relieved DSS of further reunification efforts with their parents and appointed their grandfather to serve as guardian. The trial court ordered visitation for respondents to take place at the grandfather's discretion. On 2 May 2002, respondents filed Motions in the Cause requesting return of both children to the custody of the mother, to reinstate reasonable efforts towards reunification, and requested a new psychological evaluation. Following a hearing on 17 May 2002, the trial court denied respondents' motions in part, but allowed Little's request for visitation and Laney's request for a new psychological evaluation.

On 13 September 2002, the trial court conducted a permanency planning hearing. The trial court announced its decision in open court to continue guardianship of the children with the grandfather and reaffirmed its decision to relieve DSS of reunification efforts. On 23 September 2002, respondents, acting *pro se*, filed written notice of appeal and attached a Certificate of Service certifying that "service of the foregoing Notice of Appeal was made upon the respective party by: Hand Delivery." Both respondents entered a separate Notice of Appeal and each signed their own Certificate of Service. Neither Laney's nor Little's Certificate of Service indicated the "respective party" or identified who had been served by "hand delivery." The trial court entered judgment on 7 October 2002.

DSS moves this Court to dismiss respondents' appeal for failure to timely file or properly serve Notice of Appeal.

## II. Issues

The threshold issue on appeal is whether respondents properly filed and served Notice of Appeal on DSS.

The issues presented by Laney's appeal are whether the trial court erred by: (1) failing to appoint a guardian *ad litem* for her; (2) failing to hold a permanency planning hearing within twelve months of the original order as required by N.C. Gen. Stat. § 7B-907;

**IN RE D.L., A.L.**

[166 N.C. App. 574 (2004)]

and (3) failing to allow her to present evidence at the permanency planning hearing.

The issues presented by Little's appeal are whether: (1) his constitutional and due process rights were violated by the destruction of tape recordings for the hearing held 17 May 2002; (2) evidence presented at the hearing on 13 September 2002 was sufficient to support the trial court's order for a permanent plan of guardianship for the minor children; and (3) Little received a fair permanency planning hearing.

### III. Motion to Dismiss

[1] In a verified motion filed with this Court, DSS contends respondents failed to serve either DSS or its counsel with the Notices of Appeal filed by respondents. Rule 3 of our North Carolina Rules of Appellate Procedure allows a party to appeal from a district court order rendered in a civil action by: (1) filing notice of appeal with the Clerk of Superior Court; and (2) serving copies thereof upon all other parties. N.C.R. App. P. 3(a) (2004). In civil actions, a party must file and serve notice of appeal "within thirty days after entry of judgment." N.C.R. App. P. 3(c) (2004).

Rule 3(b), however, provides that appeals in juvenile matters shall be "taken in the time and manner" set forth in N.C. Gen. Stat. § 7B-1001. N.C.R. App. P. 3(b) (2004). Pursuant to N.C. Gen. Stat. § 7B-1001:

Notice of appeal shall be given in writing within 10 days after entry of the order. . . . A final order shall include:

. . . .

(3) Any order of disposition after an adjudication that a juvenile is abused, neglected, or dependent . . . .

Although this statute speaks to the time and manner of appeal, the statute is devoid of any reference to proper *service* of such notice. Where the relevant juvenile statute is silent, the North Carolina Rules of Civil Procedure govern. *In re Brown*, 141 N.C. App. 550, 551, 539 S.E.2d 366, 368 (2000), *cert. denied*, 353 N.C. 374, 547 S.E.2d 809 (2001). Rule 5(a) of the North Carolina Rules of Civil Procedure provides that "every written notice . . . shall be served upon each of the parties . . . ." N.C. Gen. Stat. § 1A-1, Rule 5(a) (2003). Rule 5 provides

that such service can be made by hand delivery if, at the time of filing the written notice, a certificate is also filed certifying "the paper was served in the manner prescribed by this rule . . . ." N.C. Gen. Stat. § 1A-1, Rule 5(b) and (d) (2003).

Here, respondents filed a written "Certificate of Service" indicating that notice of appeal had been served upon the "respective party" by "Hand delivery." DSS argues that respondents' failure to indicate the name or address of the "respective party" served is a jurisdictional defect requiring dismissal of the appeal pursuant to N.C.R. App. P. 26(c) (2004). We disagree. Our Supreme Court held, "a party upon whom service of notice of appeal is required may waive the failure of service by not raising the issue by motion or otherwise and by participating without objection in the appeal . . . ." *Hale v. Afro-American Arts International,* 335 N.C. 231, 232, 436 S.E.2d 588, 589 (1993).

Respondents filed Notices of Appeal on 23 September 2002. The Appellate Entries form was filed with the trial court on 15 May 2003 and indicated DSS's attorney, address, and telephone number. The clerk of court was directed to "transmit a copy of these Appellate Entries to counsel for all parties." Further, on 20 June 2003, Notice of Appointment of Appellate Counsel was mailed to "all other parties on the Appellate Entries . . . ." A proposed Record on Appeal was served on DSS on 6 October 2003. On 7 November 2003, DSS's attorney wrote a letter to respondents' attorneys that referenced "Supplement to Record on Appeal" and requested several documents be "added to the record on appeal." The letter stated, "If you will include the material enclosed in an amended record . . . I will be glad to sign the stipulation of settlement previously tendered." DSS's counsel was the same individual identified on the Appellate Entries form filed 15 May 2003. DSS did not object to service of notice of appeal until 18 November 2003 when it filed its Motion to Dismiss this appeal.

DSS does not contend it was prejudiced by any failure of respondents to properly serve notice of appeal. In its motion, DSS asserts it "became aware of Respondent/Appellants' notice of appeal through communications with the clerk of court's office on a date several days subsequent and removed from [the date notice of appeal was filed.]" DSS does not argue it never received service of: (1) the Appellate Entries filed 15 May 2003; (2) the Notice of Appointment of Appellate Counsel filed 20 June 2003; or (3) the proposed Record on Appeal filed 6 October 2003. By participating in respondents' appeal prior to "raising the issue by motion," DSS waived any objection to

failure of service. *Hale*, 335 N.C. at 232, 436 S.E.2d at 589. DSS's Motion to Dismiss is denied.

### IV. Guardian *Ad Litem*

**[2]** Laney argues the trial court erred by failing to appoint a guardian *ad litem* after she was diagnosed with a "schizo-affective disorder" during a psychological evaluation of the family. We disagree.

The trial court shall appoint a guardian *ad litem* to represent a parent:

Where it is alleged that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101 in that the parent is incapable as the result of substance abuse, mental retardation, mental illness . . . or any other similar cause or condition of providing for the proper care and supervision of the juvenile . . . .

N.C. Gen. Stat. § 7B-602(b)(1) (2003). This statute "is narrow in scope and does not require the appointment of a guardian *ad litem* in every case where dependency is alleged . . . ." *In re H.W.*, 163 N.C. App. 438, 447, 594 S.E.2d 211, 216, *disc. rev. denied*, 358 N.C. 543, 599 S.E.2d 46 (2004). The specific language of the statute mandates the appointment of a guardian *ad litem* only if: "(1) the petition specifically alleges dependency; and (2) the majority of the dependency allegations tend to show that a parent or guardian is incapable as the result of some debilitating condition listed in the statute of providing for the proper care and supervision of his or her child." *Id.* (citing *In re Estes*, 157 N.C. App. 513, 518, 579 S.E.2d 496, 499, *disc. rev. denied*, 357 N.C. 459, 585 S.E.2d 390 (2003)). In the case of *In re H.W.*, this Court affirmed the trial court's judgment and held N.C. Gen. Stat. § 7B-602(b)(1) did not require the appointment, *sua sponte*, of a guardian *ad litem* for the respondent-father because the petition did not allege incapacity for the respondent-father. 163 N.C. App. at 447, 594 S.E.2d at 216.

Here, two separate juvenile petitions were originally filed for each child and alleged, "the juvenile is a NEGLECTED JUVENILE, in that the juvenile: (1) does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, . . . [and] lives in an environment injurious to the juvenile's welfare." The petitions at bar did not allege the children were "dependant juvenile[s]" and did not assert Laney was "incapable as the result of some debilitating condition . . . of providing for the proper care" of the children. *Id.* at 447, 594 S.E.2d at 216.

As no allegations of dependency were before the trial court, it was not required to appoint, *sua sponte*, a guardian *ad litem* for Laney. This assignment of error is overruled.

## V.  Timeliness of Permanency Planning Hearing

[3] Laney contends the trial court erred by failing to conduct a permanency planning hearing within twelve months of the date of the original order.

N.C. Gen. Stat. § 7B-907(a) (2003) states:

In any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody, and the hearing may be combined, if appropriate, with a review hearing required by G.S. 7B-906.

"The purpose of the hearing is to 'develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time.' " *In re Dula*, 143 N.C. App. 16, 18, 544 S.E.2d 591, 593 (quoting N.C. Gen. Stat. § 7B-907(a)), *aff'd per curiam*, 354 N.C. 356, 554 S.E.2d 336 (2001).

Here, DSS obtained a nonsecure custody order for the children on 26 July 2001. On 28 February 2002, the court concluded a review hearing, appointed the children's grandfather as guardian, and scheduled a permanency planning hearing for 4 April 2002. No hearing occurred in April, and it was rescheduled for 17 May 2002. Prior to the hearing in May, respondents filed separate motions in the cause. Laney moved: (1) "for change of disposition pending appeal;" (2) "to restore placement of the minor children with the respondent mother;" (3) "to continue reasonable efforts;" and (4) "for a new psychological evaluation." Little moved for: (1) "[D.L. to] be returned to his custody . . . or in the alternative, (2) that the Court order that [DSS] re-start reunification efforts . . . ." Following a hearing on the motions on 17 May 2002, the trial court entered an order on 2 June 2002 that acknowledged "a permanency planning hearing was initially schedule [sic] for today's review . . ." and ruled instead on the respondents' motions. The trial court again rescheduled the permanency planning hearing for four days later on 6 June 2002.

The permanency planning hearing was again rescheduled. On 23 August 2002, Laney's attorney sent a facsimile to the presiding

judge, with copies to Little's and DSS's attorneys, informing the trial court:

> This permanency planning hearing was continued from 5/2, 5/16, 6/6, and 7/18 because it wasn't reached. . . . My client is very exasperated because of the delays, and requested that I set it on for 8/29, which I attempted to do. However, the clerk informs me that there are 32 cases on for that day, and that Friday already has something scheduled. . . . My client has asked me to see if the court could consider hearing it sooner than 9/12.

A hearing was finally held 13 September 2002, and an order was entered 7 October 2002.

According to N.C. Gen. Stat. § 7B-907(a), a permanency planning hearing was required to be conducted prior to 26 July 2002, no later than twelve months following entry of the initial nonsecure custody order on 26 July 2001. The permanency planning hearing was originally scheduled for 17 May 2002, and the parties appeared before the court on that day. Respondents, however, had filed motions in the cause several days prior to hearing, which the trial court, in its discretion, chose to initially address prior to conducting a permanency planning hearing.

The trial court erred by failing to conduct a permanency planning hearing within the time required under N.C. Gen. Stat. § 7B-907(a). In light of our holding below, the trial court's failure to conduct a timely permanency planning hearing is harmless.

## VI. Evidence at Hearing

[4] Laney contends the trial court erred by failing to allow her to present evidence at the permanency planning hearing. We agree.

Our Supreme Court has held that in child custody matters:

> [w]henever the trial court is determining the best interest of a child, *any evidence* which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony. Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child.

*In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984) (emphasis supplied). In a permanency planning hearing, the trial court may

**IN RE D.L., A.L.**

[166 N.C. App. 574 (2004)]

exclude evidence that is not "relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-907(b) (2003).

Here, the transcript shows the trial court allowed Laney, acting *pro se*, to speak at the hearing and afforded her an opportunity to be heard. She was limited, however, to matters regarding the permanency plan. The trial court stated:

> I'm going to limit you as to the permanency plan. I will not get into matters that have already been adjudicated and an order that has been entered as to that. I want you to understand that. And if you don't abide by my ruling to limit as to this permanency plan, then I'm not going to let you just ramble and go into things that have already been adjudicated. And with that caveat on my part, I'll hear from you as to whether you want to be sworn and put on sworn testimony, I'll be glad to hear from you.

Laney took the witness stand and was sworn. Laney received an opportunity to present evidence and availed herself of this opportunity by presenting her arguments.

Although she took the stand, a review of the transcript indicates she offered no testimony regarding the permanency plan and instead attempted to offer arguments regarding "local rules," the Bible, and her various attorneys. The trial court did not allow Laney to testify regarding legal advice she had received and certain verses from the Bible that she wished to present.

The transcript indicates DSS presented *no* testimony into evidence other than the DSS attorney's statements. Statements by an attorney are not considered evidence. *State v. Haislip*, 79 N.C. App. 656, 658, 339 S.E.2d 832, 834 (1986) (holding "statement by defendant's counsel . . . is not evidence") (citing *State v. Albert*, 312 N.C. 567, 579, 324 S.E.2d 233, 240-41 (1985)).

The only "evidence" offered by DSS was a summary prepared on 11 September 2002. "By stating a single evidentiary fact and adopting DSS and guardian *ad litem* reports, the trial court's findings are not 'specific ultimate facts . . . sufficient for this Court to determine that the judgment is adequately supported by competent evidence.' " *In re Harton*, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003) (quoting *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002)); *see also In re Shue*, 311 N.C. at 597, 319 S.E.2d at 574 ("Without hearing

and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child."). The adoption of the DSS summary into the Order is insufficient to constitute competent evidence to support the trial court's findings of facts.

As *no* evidence was presented by either DSS or Laney regarding the permanency plan, the trial court's findings of fact are unsupported. Without any evidence to support its findings, the trial court erred in its conclusions of law. We reverse the permanency plan order as it relates to Laney and remand for a new permanency planning hearing where the parties may offer competent, material, and relevant evidence.

## VII.  Destruction of Tapes

[5] We now consider that portion of the appeal regarding Little's assignments of error. First, Little argues his constitutional and due process rights were violated by the destruction of tapes recorded during the 17 May 2002 hearing. He asserts evidence presented during that hearing is "crucial" because the 13 September 2002 hearing was a "continuation" of the permanency planning hearing conducted 17 May 2002. We disagree.

DSS's counsel, at the beginning of the hearing, stated, "the matter is on basically for continuation of a permanency planning hearing. The initial permanency planning hearing was conducted by Judge Gullette on 5-17 . . . ." Later, however, it was clarified that a permanency planning hearing was never conducted during the 17 May 2002 session. During the 13 September 2002 hearing, DSS's counsel clarified his earlier characterization of the hearing and informed the trial court:

> [On] February 28, 2002 . . . Miss Laney was here as was Mr. Little by their first set of counsel; and at that time the Court made determinations with regard to—with regard to the 7B—basically the 7B and 907 analysis. That was actually a review hearing. That was followed up by what we were supposed to have as a permanency planning hearing. The first of that occurred on 5-17. So the basic thing I have to say is that although the plan itself was changed, we were trying to follow that up with necessary permanency planning hearing within the period of time allotted by statute. We did get partly away into doing that, and they—both Respondent Mother and Respondent Father through their coun-

sel had various issues raised with regard to permanency planning. But we didn't actually have—this hearing today is really the first opportunity we've actually had since that initial review which set the permanency plan in place. It's the first time we had today to actually put that in place as a permanent plan under the statute. . . .

Our review of the order entered following the 17 May 2002 hearing indicates that although "[a] permanency planning hearing was initially scheduled for today's review pursuant to N.C. Gen Stat. § 7B-907," the hearing was not conducted. The trial court's order stated, "A permanency planning hearing *shall be* conducted 6/6/02." (Emphasis supplied). The order indicates no permanency planning hearing was begun or conducted. Little's brief concedes "no previous order is deemed a permanency planning order." The record indicates the 13 September 2002 hearing was the first instance the issue of a permanency planning order was reached.

Little neither assigned error to nor entered notice of appeal on the 17 May 2002 order. Further, he has not attempted to present a narration of the evidence or identify portions of the record to support his argument. *See In re Clark*, 159 N.C. App. 75, 83, 582 S.E.2d 657, 662 (2003) (holding no error in destruction of tapes where respondent: (1) made no attempt to use N.C.R. App. P. 9(c)(1) "to provide a narration of the evidence in order to reflect the true sense of the evidence received to the extent the record does not do so;" and (2) "points to nothing specific in the record to support her argument"). This assignment of error is overruled.

## VIII.  Sufficiency of the Evidence

**[6]** Little next argues the permanency planning order is not supported by sufficient evidence. We agree.

As discussed above, DSS presented *no* competent evidence to support any of the findings. Further, as in the case of *In re Weiler*, the trial court here "made no statutory findings that reunification efforts would be futile or that the health and safety of the children were inconsistent with such efforts as required by section 7B-507(b)." 158 N.C. App. 473, 480, 581 S.E.2d 134, 138 (2003). The findings of fact are insufficient to support the conclusions of law.

Little testified he had completed parenting classes, was paying child support, and had attempted to maintain visits with the children.

**IN RE D.L., A.L.**

[166 N.C. App. 574 (2004)]

The trial court made no findings regarding this testimony. The permanency planning order as it relates to Little is reversed and remanded for further findings of fact and conclusions of law in light of the only evidence presented, which was Little's testimony.

### IX. Conclusion

Little argues he did not receive a fair permanency planning hearing. His brief fails to offer any argument or authority in support of his assertion. He has abandoned this assignment of error pursuant to N.C.R. App. P. 28(b)(6) (2004).

The trial court did not err in failing to appoint, *sua sponte*, a guardian *ad litem* for Laney. The trial court erred in failing to conduct a permanency planning hearing within the time required by N.C. Gen. Stat. § 7B-907. However, in light of our holding that the trial court's order is reversed for lack of competent evidence to support the findings of fact, this error is harmless.

Little's constitutional rights were not violated by the destruction of the tape recordings of the 17 May 2002 hearing. The trial court erred in making findings of fact that are not supported by competent evidence and in failing to make findings of fact regarding Little's testimony. The order is reversed and remanded for findings consistent with the evidence presented.

Reversed in part; Reversed and Remanded in part.

Judges HUDSON and BRYANT concur.