An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-206

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

IN THE MATTER OF:

                               Mitchell County
                               No. 09 J 32

K.B.G.

Appeal by respondent from order entered 4 November 2013 by Judge Alexander Lyerly in Mitchell County District Court.  Heard in the Court of Appeals 8 July 2014.

> *Hal G. Harrison and R. Ben Harrison for petitioner Mitchell County Department of Social Services.*
>
> *Michael N. Tousey for guardian ad litem.*
>
> *Appellate Defender Staples Hughes, by Assistant Appellate Defender J. Lee Gilliam, for respondent-appellant.*

ERVIN, Judge.

Respondent-Mother Michelle B. appeals from an order terminating her parental rights in her daughter, K.B.G.[1]  On appeal, Respondent-Mother contends that the trial court erred by considering new evidence on remand from a prior decision of this Court without affording her an equivalent opportunity to present additional evidence, by making findings of fact that lack adequate evidentiary support and fail to support the trial

---

[1]K.B.G. will be referred to throughout the remainder of this opinion as "Kayla," a pseudonym used for ease of reading and to protect the juvenile's privacy.

court's determination that Respondent-Mother's parental rights in Kayla were subject to termination for neglect, and by failing to make findings of fact relating to Respondent-Mother's fitness to parent Kayla as of the date of the termination hearing. After careful consideration of Respondent-Mother's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

On 2 July 2009, the Mitchell County Department of Social Services filed a petition alleging that Kayla was a neglected and dependent juvenile, with the primary basis for this contention being continuing domestic violence between Respondent-Mother and Respondent-Father Daron G. On 20 August 2009, the trial court entered an order adjudicating Kayla to be a neglected and dependent juvenile. On 17 December 2010, DSS filed a motion to terminate Respondent-Mother's and Respondent-Father's parental rights in Kayla on the grounds of neglect as authorized by N.C. Gen. Stat. § 7B-1111(a)(1). On 16 August 2011, the trial court entered an order terminating Respondent-Mother's and Respondent-Father's parental rights in Kayla. Respondent-Mother and Respondent-Father noted appeals to this Court from the trial court's termination order. On 1 May 2012,

this Court filed an unpublished decision reversing the trial court's termination order on the grounds that the trial court had failed to make "specific, ultimate findings of fact establishing that [Kayla] was a neglected juvenile" and had, instead, made findings of fact that were "nearly verbatim recitations of the allegations contained in DSS's motion to terminate [Respondent-Mother's and Respondent-Father's] parental rights," and remanding this case to the Mitchell County District Court "for proper findings of fact and conclusions of law which are supported by those findings of fact." *In re K.B.G.*, COA11-1495, 201 N.C. App. Lexis 565, at *6-9 (2012).

A remand hearing, at which the trial court declined to hear or receive new evidence, was held on 1 October 2012. On 30 October 2012, the trial court entered a remand order terminating Respondent-Mother's and Respondent-Father's parental rights in Kayla on the grounds of neglect as authorized N.C. Gen. Stat. § 7B-1111(a)(1) and on the grounds that they had left Kayla in foster care for at least twelve months without making reasonable progress in correcting the conditions that led to her removal from the home as authorized by N.C. Gen. Stat. § 7B-1111(a)(2). Respondent-Mother noted an appeal to this Court from the trial

court's remand order.[2]  On 20 August 2013, we filed an unpublished opinion reversing the trial court's remand order and remanding this case to the Mitchell County District Court for the entry of a new order containing adequate findings of fact and conclusions of law on the grounds that the trial court had erred by determining that Respondent-Mother's parental rights in Kayla were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) given that DSS had failed to allege this ground for termination in its petition, and that the trial court had failed to make "specific, ultimate findings of fact to support its conclusion that grounds existed to terminate respondent mother's parental rights based on neglect."  *In re K.B.G.*, COA13-160, 2013 N.C. App. Lexis 868, at *16 (2013).

A second hearing on remand, at which the trial court again refused to hear or receive any additional evidence, was held on 4 November 2013.  On the same date, the trial court entered a second remand order concluding that Respondent-Mother's parental rights in Kayla were subject to termination for neglect as authorized by N.C. Gen. Stat. § 7B-1111(a)(1) and that Respondent-Mother's parental rights in Kayla should be

---

[2]As a result of the fact that he did not appeal the trial court's remand order, the entry of that order effectively terminated Respondent-Father's parental rights in Kayla.

terminated. Respondent-Mother noted an appeal to this Court from the trial court's second remand order.[3]

## II. Substantive Legal Analysis

### A. Consideration of New Evidence on Remand

In her first challenge to the trial court's second remand order, Respondent-Mother argues that the trial court erred by considering new evidence on remand without allowing her to present additional evidence herself. More specifically, Respondent-Mother claims that, after informing the parties that it would base its order solely upon the evidence presented at the 12 July 2011 hearing, the trial court took judicial notice of the entire court file relating to this proceeding, effectively depriving her of the opportunity to contest the consideration of portions of the court file that were not appropriately subject to judicial notice or were incorporated into the court file after the 12 July 2011 evidentiary hearing. Respondent-Mother is not entitled to relief from the trial court's second remand order on the basis of this contention.

The first problem with this aspect of Respondent-Mother's challenge to the trial court's second remand order is that the trial court's initial termination order reflects that DSS

___

[3]A more detailed description of the underlying factual background is contained in the opinion in which we addressed Respondent-Mother's challenge to the trial court's first remand order. *In re K.B.G.*, 2013 N.C. App. Lexis 868.

"offered Exhibits Numbers 1-14, together with the entire Court File," at the 12 July 2011 hearing and that "[t]hese Exhibits were received without objection." In other words, contrary to Respondent-Mother's contention, the materials in the court file were, in fact, admitted into evidence at the original evidentiary hearing. As a result, the trial court did not err to the extent that it relied on information contained in the court file as of 12 July 2011 given that the file as of that date had been admitted into evidence.

Admittedly, any decision by the trial court to consider information developed and placed in the court file after 12 July 2011 would have been problematic. In support of her contention that the trial court's decision was affected by information developed and included in the court file after 12 July 2011, Respondent-Mother points to the trial court's finding that:

> [T]he Court finds: (1) the juvenile is now well over five years of age and has spent over four of those years in foster care and DSS custody; (2) that, over the years, the juvenile has established a strong bond with her foster family, and said foster family strongly desires to adopt the juvenile; . . . [and] (5) that the overwhelming weight of the evidence firmly establishes that a strong and loving bond exists between the juvenile and her prospective adoptive parents[.] Thus, the Court finds that her proposed adoption by the current foster parents is in the best interest and welfare of the juvenile[.]

We are not persuaded by the language contained in the finding of fact upon which Respondent-Mother relies that the trial court did, in fact, consider, much less rely upon, such post-12 July 2011 evidence.

The "presumption in a bench trial is that 'the judge disregarded any incompetent evidence that may have been admitted unless it affirmatively appears that he was influenced thereby,'" *In re H.L.A.D.*, 184 N.C. App. 381, 395, 646 S.E.2d 425, 435 (2007) (quoting *In re L.C.*, 181 N.C. App. 278, 284, 638 S.E.2d 638, 642 (2007)), *aff'd*, 362 N.C. 170, 655 S.E.2d 712 (2008), with Respondent-Mother "bear[ing] the burden of showing that the trial court relied on the incompetent evidence in making its findings." *Id.* (citing *In re Huff*, 140 N.C. App. 288, 301, 536 S.E.2d 838, 846 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001)). Respondent-Mother has not, however, cited us to any specific indication in the second remand order that the trial court relied upon evidence derived from portions of the court file developed and filed after 12 July 2011 in making its "best interests" determination. The trial court's "best interests" finding, upon which Respondent-Mother generally relies in support of this argument, appears to rest on the testimony of Will Winters, a social worker who testified at the 12 July 2011 hearing that Kayla was "well

bonded" to her foster parents and foster brother and that Kayla's foster family had "welcomed [Kayla] as just a member of their family," updated to reflect Kayla's age and the length of time that she had spent in foster care. As a result, given that Respondent-Mother has failed to show that the trial court relied upon evidence contained in that portion of the court file that was developed and filed after the conclusion of the 12 July 2011 hearing in its second remand order, she is not entitled to an award of appellate relief from that order on the basis of this contention.

## B. Evidentiary Support for the Trial Court's Factual Findings

Secondly, Respondent-Mother argues that the trial court's findings of fact to the effect that Respondent-Mother (1) failed to comply with her case plan; (2) continued to engage in domestic violence with the father; and (3) continued to abuse alcohol lacked sufficient evidentiary support. More specifically, Respondent-Mother contends that the undisputed record evidence establishes that the findings in earlier orders indicate that she was complying with her case plan, that she would not have been allowed to have unsupervised visitation or a trial placement if she had been out of compliance with her case plan, that she had submitted documentary support for her contention that she was complying with her case plan, that she

was not culpable in and had no responsibility for the incidents of domestic violence in which she had been involved, that no continuing domestic violence was occurring, and that she was not continuing to abuse alcohol, so that there was no basis for the trial court's ultimate determination that Respondent-Mother's parental rights in Kayla should be terminated on the grounds of neglect. We do not find Respondent-Mother's argument persuasive.

"The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." *In re D.J.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing *Huff*, 140 N.C. App. at 291, 536 S.E.2d at 840). A trial court may treat a properly admitted DSS report as evidence and incorporate the contents of that report into its order so long as the trial court does not use the DSS report as a substitute for its own independent review. *In re K.S.*, 183 N.C. App. 315, 324, 646 S.E.2d 541, 546 (2007); *In re D.L.*, 166 N.C. App. 574, 582–83, 603 S.E.2d 376, 382 (2004). After carefully reviewing the record, we believe that the challenged factual findings have ample evidentiary support and amply support the trial court's determination that Respondent-

Mother's parental rights in Kayla were subject to termination for neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1).

Although the record contains prior orders indicating that Respondent-Mother was complying with her case plan, other orders entered prior to the filing of the termination petition, such as the order authorizing DSS to cease attempting to reunify Respondent-Mother with Kayla, contain findings of fact to the effect that there had been "no substantial compliance" with Respondent-Mother's case plan and that Respondent-Mother had "failed to obtain all Court ordered treatment, evaluations, and [has] been in non-compliance with the DSS plan[.]" Similarly, reports presented by DSS and Kayla's guardian *ad litem* note Respondent-Mother's refusal "to communicate with [Intensive In Home] Supervisor or to work with case worker or to visit with her child" and her sporadic attendance at counseling sessions. Finally, the trial court was not, contrary to Respondent-Mother's contention, required to treat the mental health assessment upon which she places such emphasis in her brief as sufficient compliance with the requirement in her case plan that she obtain a mental health evaluation given the limited information provided in that assessment or to treat the letters from four mental health providers to the effect that they were unable to provide the required evaluation as conclusive given

Respondent-Father's ability to obtain an adequate assessment during the same period of time. In essence, the prior orders and other evidence contained in the present record demonstrate that, after a period in which Respondent-Mother was making efforts to comply with her case plan, she faltered in that process and never fully complied with her case plan. As a result, the trial court did not err by determining that Respondent-Mother had failed to comply with her case plan.

Secondly, the trial court's unchallenged findings of fact reflect that (1) Respondent-Mother continued to be involved in incidents of domestic violence with Respondent-Father and (2) that Respondent-Mother engaged in a "pattern of refusing to testify" against Respondent-Father following the acts of domestic violence that he perpetrated against her. In addition, reports submitted by Kayla's guardian *ad litem* indicated that Respondent-Mother had a tendency to "protect" Respondent-Father from the effects of his violent conduct and stated that Respondent-Mother "is not showing motivation to choose the safety of her daughter over the violent relationship with [Respondent-Father]." In fact, a prior order contained in the court file noted that Respondent-Father still had a key to Respondent-Mother's home. As a result, the trial court's findings concerning the existence of continuing domestic

violence have adequate evidentiary support and establish that Respondent-Mother, without having instigated the actions that Respondent-Father took against her, failed to take adequate steps to prevent such acts of domestic violence from occurring or to respond to such acts of domestic violence following their occurrence in a manner which would have provided protection to herself and Kayla.

Finally, the record is replete with evidence tending to show that Respondent-Mother continued to abuse alcohol. According to multiple DSS reports, Respondent-"Mother need[ed] to become alcohol free." In addition, Respondent-Mother's long-term alcohol abuse and her relapse into excessive alcohol consumption were mentioned in her clinical evaluation. Similarly, a report submitted by Kayla's guardian *ad litem* noted that Respondent-Mother "admits to continuing to abuse alcohol." Moreover, the trial court found in a prior order that alcohol was discovered in Respondent-Mother's home on 7 September 2010, when an incident of domestic violence between Respondent-Father and Respondent-Mother occurred. Finally, despite Respondent-Mother's contention to the contrary, the record contains ample evidence tending to show that Respondent-Mother's alcohol abuse could have an adverse impact on Kayla. For example, according to a report submitted by Kayla's guardian *ad litem*, Respondent-

Mother and Respondent-Father both stated "that the worst domestic violence has occurred when [Respondent-Mother] has been drinking." Thus, the record contains ample evidentiary support for the trial court's findings relating to the effect of Respondent-Mother's alcohol consumption. As a result, given that the record fully supports the challenged findings of fact discussed in Respondent-Mother's brief and given that the trial court's findings concerning Respondent-Mother's failure to comply with her case plan, involvement in domestic violence, and continued consumption of alcohol provide ample support for the trial court's finding that Respondent-Mother's parental rights in Kayla were subject to termination for neglect as authorized by N.C. Gen. Stat. § 7B-1111(a)(1), we conclude that Respondent-Mother is not entitled to relief from the trial court's second remand order on the basis of the contention discussed in this section of our opinion.

### C. Fitness to Parent

Finally, Respondent-Mother contends that the trial court's findings of fact did not suffice to support termination of her parental rights in Kayla for neglect as authorized by N.C. Gen. Stat. § 7B-1111(a)(1). In support of this contention, Respondent-Mother argues that, even if the findings that the trial court actually made had adequate evidentiary support, the

trial court was not entitled to terminate her parental rights in Kayla on the basis of neglect given the absence of sufficient findings establishing that she lacked the current ability to parent her daughter. We are not persuaded by Respondent-Mother's argument.

As we have already noted, the trial court concluded that Respondent-Mother's parental rights in Kayla were subject to termination for neglect as authorized by N.C. Gen. Stat. § 7B-1111(a)(1). A "neglected juvenile" is one

> who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). In an instance, such as this one, in which a child has been removed from the parent's custody before the termination hearing and the petitioner presents evidence of prior neglect in support of its request for termination of the parent's parental rights, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the

probability of a repetition of neglect." *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). In such circumstances, the neglect determination "must[,] of necessity[,] be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." *In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999). In the event that the trial court determines that there is a reasonable probability that the neglect that the juvenile previously suffered will recur, the trial court has adequately addressed the "current fitness" issue raised in Respondent-Mother's brief.

In its second remand order, the trial court found as fact that: (1) Respondent-Mother failed to comply with her case plan, (2) domestic abuse between Respondent-Mother and Respondent-Father was a continuing problem, and (3) Respondent-Mother continued to abuse alcohol. In addition, the trial court found that:

> supervised visitations between [Kayla] and Respondent[-Mother], have had a negative behavioral impact upon the child. Specifically, the Court finds that prior to, and shortly after her removal from the care of Respondent[-Mother] and [Respondent-Father], the juvenile had exhibited defiance and other behavioral problems. Further, the Court finds that during periods of supervised visitation with Respondent[-

Mother], these pre-removal behavioral problems have again manifested themselves, in that, the child has often emotionally shut down and lain [sic] stiff on the floor.

After noting that Respondent-Mother often missed her supervised visits with the juvenile, the trial court found that:

Ultimately, the Court finds the testimony of [Mr.] Winters to be very credible, and attaches significant weight to his testimony. Based on said testimony by the social worker, together with the entire Court file, the Court finds that Respondent[-Mother] has neglected the juvenile (as defined by N.C. Gen. Stat. § 7B-101(15)), that she has continued to neglect the juvenile, and there is a likelihood of future neglect if the juvenile is returned to Respondent-[Mother].

Finally, the trial court found as a fact "that the meager and half-hearted efforts undertaken by Respondent[-Mother] are insufficient to establish the absence of potential future neglect of the juvenile should she be returned to Respondent[-Mother]'s custody and care." As a result, in light of these findings, which establish a reasonable basis for believing that the neglect that Kayla suffered in the past would recur in the event that she was returned to Respondent-Mother's care, we conclude that the trial court adequately addressed Respondent-Mother's current fitness to parent Kayla.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Respondent-Mother's challenges to the trial court's order have merit. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges McGEE and STEELMAN concur.

Report per Rule 30(e).