IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1006

Filed 21 May 2025

Caldwell County, Nos. 22JA000020-130, 22JA000021-130, 22JA000134-130

IN THE MATTER OF:

J.A.S.F., J.A.S.F., M.S.S-F.

Minor Children

Appeal by respondent-mother from permanency planning orders entered 13 August 2024 by Judge Robert A. Mullinax, Jr. in Caldwell County District Court. Heard in the Court of Appeals 23 April 2025.

> *Stephen Schoeberle, for petitioner-appellee Caldwell County Department of Social Services.*

> *Michelle F. Lynch, for Guardian ad Litem.*

> *Jeffrey L. Miller, for respondent-appellant mother.*

FREEMAN, Judge.

Respondent-mother appeals from the trial court's permanency planning orders awarding guardianship of Ja.A.S.F. ("Jim"), Jo.A.S.F. ("Jed"), and M.S.S.F. ("Mark") to the children's foster parents.[1] On appeal, respondent-mother argues: (1) the permanency planning order was not supported by competent evidence, (2) the trial

---

[1] Pseudonyms are used to protect the juveniles' identities pursuant to N.C. R. App. P. 42(b).

court failed to find she was unfit or acted inconsistently with her constitutionally protected status, and (3) she received ineffective assistance of counsel. After careful review, we agree the permanency planning order was not supported by competent evidence. Accordingly, we vacate and remand.

## I.    Factual and Procedural Background

The Caldwell County Department of Social Services ("DSS") became involved with respondent-mother, Jim, and Jed, after the Lenior Police Department received a call on 30 July 2021. Thereafter, law enforcement discovered that respondent-mother was strangled by the children's father, Gerber Salinas Paredes, in the presence of the two children in the family's home. Paredes was subsequently charged with felony assault by strangulation and his bond conditions prohibited conduct with respondent-mother.[2]

On 2 August 2021, DSS assisted respondent-mother to obtain housing at the Caldwell County Shelter Home. But on 23 August 2021, respondent-mother was asked to leave that shelter based on a "lack of cooperation and ongoing contact" with Paredes. DSS began providing case management services to the family on 16 September 2021 and a few days later, Jim and Jed were placed with a temporary safety provider due to continual safety concerns. On 25 September 2021, DSS was notified that respondent-mother had removed the children from the temporary safety

---

[2] Though Paredas is the father of all the children in this action, he was later deported to his country of origin and is not a party to this action.

provider and ceased communication with the temporary safety provider. DSS located the children's parents and the children around 6 October 2021. While DSS continued to assist respondent-mother and the children locate housing, respondent-mother and the children returned to the home where Paredes resided.

On 2 November 2021 Paredes tested positive for amphetamines, cocaine, methamphetamine, cannabinoids, and benzoylecgonine in a hair follicle screening. On 20 December 2021, Jim and Jed tested positive for amphetamines, cocaine, and methamphetamine in hair follicle screenings.

On 27 January 2022, respondent-mother asked DSS to help her find new housing after reporting a domestic violence incident with Paredes in the presence of the children. On 2 February 2022, respondent-mother and the children left the housing that DSS provided, so respondent-mother could resume a relationship with Paredes. Around 6:45 a.m. that day, Paredes, respondent-mother, and the children were involved in a car accident in which the family's vehicle flipped over. When law enforcement arrived at the scene, they did not find any members of the family. DSS later discovered that the parents left the scene with the children and went to a nearby home. Neither respondent-mother nor Paredes sought medical attention for the children, despite the children not having been buckled into car seats at the time of the accident. DSS notified emergency medical services for the children to receive medical attention and subsequently filed a petition alleging Jim and Jed were neglected and dependent. That same day, the trial court ordered DSS to take non-

secure custody of Jim and Jed. On 8 February 2022, the trial court ordered continued non-secure custody to DSS.

On 15 March 2022, the trial court conducted an adjudicatory hearing on DSS's petition. In its 30 March 2022 order following the hearing, the trial court found that Paredes and respondent-mother were living together, respondent-mother was employed, and both parents had received some mental health services. In that order, the trial court adjudicated Jim and Jed as neglected and dependent. Further, the trial court ordered both parents to: enter into and comply with DSS' Out-Of-Home Family Services Agreements; complete and comply with a comprehensive clinical assessments; sign consent agreements for placement providers to release information to DSS; complete a parenting classes and comply with recommendations; comply with random urine and hair follicle drug screens; maintain stable housing and stable employment; and notify DSS "of all medications taken and comply with pill count requests." The trial court ordered the children to remain in DSS custody and continued placement in foster care. Both parents were individually granted one hour of supervised visitation a week.

On 5 July 2022, the trial court held a permanency planning hearing for Jim and Jed and ordered a primary permanent plan of reunification and a secondary plan of adoption. Specifically, the trial court found that respondent-mother had begun counseling and a domestic violence assessment but had not attended or participated in further recommended sessions; respondent-mother had quit her job; and neither

parent had visited the children for a six-week period, but on 22 April 2022, both parents had started visiting weekly. This hearing and order established that the parents had entered into their case plans on 6 April 2022 and required them to complete and comply with the tasks in their respective case plans.

On 15 November 2022, respondent-mother gave birth to Mark and the next day, DSS obtained non-secure custody of Mark after his release from the hospital. Two days later, DSS filed a petition alleging that Mark was neglected and dependent. Mark was adjudicated neglected and dependent on 16 March 2023.

On 6 December 2022, the trial court held another permanency planning hearing for Jim and Jed. In its 6 December 2022 order, the trial court found respondent-mother had made limited progress on her case plan; her visitation with the children was sporadic but going well; and she had tested positive for amphetamine and methamphetamine in August 2022. The trial court ceased reunification efforts, made adoption the primary plan with guardianship as the secondary plan, and awarded respondent-mother one hour of supervised visitation a month. The trial court ceased Paredes' visitation. Then, in the next permanency planning hearing for Jim and Jed held on 1 March 2023, the trial court re-iterated its orders, and the same primary and secondary plans remained in place.

On 6 June 2023, the trial court held permanency planning hearings for all the children. Jim and Jed's primary and secondary plans, respectively, remained adoption and guardianship. Further, the trial court ordered Mark's initial primary

plan as reunification and secondary plan to be adoption. At the permanency planning hearings on 5 December 2023 and on 21 May 2024, the primary and secondary plans for all the children remained the same.

At the 13 August 2024 permanency planning hearing, the trial court changed all the children's primary plans to guardianship and secondary plans to adoption. At the hearing, the trial court heard counsel's arguments and spoke with the children's prospective guardians regarding their legal and financial obligations. Though the trial court received a DSS report, a GAL report, and the prospective guardians' affidavits, it did not hear any oral testimony. Rather, the trial court stated it would "adopt the recommendations contained in the department's reports simply providing guardianship as ordered[.]" Subsequently, the trial court awarded guardianship to the prospective guardians and continued its prior grant of visitation for respondent-mother.

## II. Jurisdiction

This Court has jurisdiction to review "[a]ny order, other than a nonsecure custody order, that changes legal custody of a juvenile." N.C.G.S. § 7B-1001(a)(4) (2023). Accordingly, we have jurisdiction to review the trial court's permanency planning order awarding guardianship to Jim, Jed, and Mark's foster parents.

## III. Standard of Review

"This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the

findings support the conclusions of law." *In re P.O.*, 207 N.C. App. 35, 41 (2010). "The trial court's findings of fact are conclusive on appeal if unchallenged or if supported by competent evidence in the record." *In re I.K.*, 377 N.C. 417, 422 (2021) (cleaned up).

A "decision of the trial court regarding best interests of a juvenile," such as a decision on guardianship or visitation, "is within the trial court's discretion and will not be overturned absent an abuse of discretion." *In re L.M.*, 238 N.C. App. 345, 349 (2014). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re A.P.W.*, 378 N.C. 405, 410 (2021) (cleaned up). We review de novo the trial court's conclusions of law. *In re P.O.*, 207 N.C. App. at 41.

## IV. Discussion

Respondent-mother first argues the permanency planning order was not supported by competent evidence. Because we agree with respondent-mother's contention that the 13 August 2024 permanency planning order was not supported by competent evidence, we need not reach respondent-mother's remaining arguments.

Chapter 7B of our General Statutes "divides abuse, neglect, and dependency proceedings into two" stages: first the adjudicatory stage, and second, the dispositional stage. *In re J.M.*, 384 N.C. 584, 592 (2023). Such proceedings "require the application of different evidentiary standards at each stage[.]" *In re O.W.*, 164

N.C. App. 699, 701 (2004) (citations omitted). At the adjudicatory stage, "heightened requirements are in place to protect the rights of . . . the juvenile's parent and assure due process of law," because "the adjudication is a formal, adversarial process, aimed at determining the truth or falsehood of the allegations in the petition." *In re K.M.*, 272 N.C. App. 487, 491–92 (2020) (cleaned up). Therefore, "[t]he trial court must apply the Rules of Evidence, and can find a child abused, neglected, or dependent only if that status is proven by clear and convincing evidence[.]" *Id.* (citations omitted). Our Supreme Court has confirmed this, holding that, in the adjudicatory phase, "the trial court may not rely solely on prior court orders and reports but must receive some oral testimony at the hearing and make an independent determination regarding the evidence presented." *In re T.N.H.*, 372 N.C. 403, 410 (2019).

After the trial court finds and concludes in the adjudicatory phase that a child is abused, neglected, or dependent, "the court then moves on to an initial disposition hearing." *In re K.M.*, 272 N.C. App. at 491 (citation omitted). At the dispositional stage, "the trial court, in its discretion, determines the child's placement based on the best interests of the child." *Id.* Our Court has described that the initial dispositional hearing "may be informal" because—contrary to the adjudicatory phase—the trial court may consider "evidence otherwise barred by the Rules of Evidence[.]" *Id.* at 492 (citations omitted); *see also* N.C.G.S. § 7B-901(a) (2023). Thus, the trial court may "incorporate into its findings information obtained from written reports by the parties," and "findings made at adjudication[,]" as well as "rely on written reports in

the disposition hearing even if they have not been admitted into evidence." *Id.* (citation omitted). If these sources of fact are sufficient to support the trial court's conclusions of law and its ultimate disposition, there is no need for the court to hear additional testimony." *Id.*

Specifically, section 7B-906.1 of our General Statutes, which governs review and permanency planning hearings, provides that "the court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, *or* testimony *or* evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C.G.S. § 7B-906.1(c) (2023) (emphasis added). Therefore, "[a]s a type of dispositional hearing, a permanency planning hearing 'may be informal and the court may consider written reports or other evidence concerning the needs of the juvenile.' " *In re J.H.*, 244 N.C. App. 255, 270 (2015) (citing N.C.G.S. § 7B-901 (2013)).

Our Supreme Court has not held the requirement articulated in *In re T.N.H.*, that the trial court must receive some oral testimony in the adjudicatory phase, applies to the *dispositional* stage of a juvenile proceeding. Nor has our Supreme Court overruled the line of cases from this Court imposing such a requirement despite the tension between those cases and the evidentiary standard articulated in subsection 7B-906.1(c). *See, e.g., In re J.T.*, 252 N.C. App. 19 (2017); *In re D.Y.*, 202 N.C. App. 140 (2010); *In re D.L.*, 166 N.C. App. 574, (2004). Accordingly, we are still

bound by this Court's precedent[3]. *See also In re Civil Penalty,* 324 N.C. 373, 384 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

When a trial court's factual findings in a permanency planning order were solely based on "court reports, prior orders, and the arguments of counsel[,]" we have held that "the trial court's conclusions of law were in error without additional evidence offered to support the trial court's findings of fact[.]" *In re J.T.*, 252 N.C. at 21 (citing *In re D.L.,* 166 N.C. App. 574 (2004); *In re D.Y.*, 202 N.C. App. 140 (2010)). In these cases, "this Court reversed the permanency planning orders" where court reports "were the only admissible evidence offered by DSS at the permanency planning hearings." *Id.* (citing *In re D.L.*, 166 N.C. App. at 582; *In re D.Y.*, 202 N.C. App. at 142–3). Further, this Court has clearly articulated that counsel's statements "are not considered evidence." *Id.* (citing *In re D.L.*, 166 N.C. App. at 582).

Similarly, the trial court in *In re J.T.* did not hear oral testimony, but "only heard statements from the attorneys involved in the case[,]" accepted court reports

---

[3] We observe that Section 7B-901(a) of our General Statutes, which governs initial dispositional hearings, articulates an *identical* evidentiary standard to that section which governs permanency planning hearings, declaring that "[t]he court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, including testimony or evidence from any person who is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C.G.S. § 7B-901(a) (2023). However, this Court has reached different holdings as to an oral testimony requirement in initial dispositional hearings and later dispositional hearings, like permanency planning and review hearings. *See In re K.M.*, 272 N.C. App. 487, 491–93 (2020). *Cf. In re J.T.*, 252 N.C. App. 19, 21 (2017).

"submitted by the guardian ad litem and a DSS social worker[,] and incorporated those reports by reference in its orders." 252 N.C. App. at 21. This Court again held that "in the absence of testimony," and where the trial court only heard statements from attorneys and incorporated reports by reference, the trial court's factual findings "were unsupported by competent evidence, and its conclusions of law were in error." *Id. See also In re S.P.*, 267 N.C. App. 533, 536–7 (2019) (holding such case was indistinguishable from *In re D.L.*, *In re D.Y.*, and *In re J.T.* where the trial court heard no testimony, accepted court reports, swore in the preparers of the court reports, and heard arguments from counsel).

The operative facts of the present case are no different from those in this Court's prior decisions. Here, the trial court did not receive any sworn oral testimony or take judicial notice of any previous matter but merely received reports and the prospective guardians' affidavits into evidence. Therefore, we are constrained to hold that the trial court's factual findings were unsupported by competent evidence and subsequently, its conclusions of law were erroneous[4].

To the extent that the GAL and DSS argue that requiring oral testimony goes against the evidentiary requirements of permanency planning proceedings as codified in section 7B-901(a) and our Supreme Court's precedent, we are compelled to follow

---

[4] To the extent that the GAL and DSS argue the guardians' affidavits were testimonial in nature, such affidavits still fail to satisfy this Court's requirement for live "oral testimony" at permanency planning hearings. *See In re J.T.*, 252 N.C. App. at 21.

this Court's precedent and similarly vacate the trial court's order in light of *In re D.L.*, *In re D.Y.*, and *In re J.T.*[5]

## V. Conclusion

For a permanency planning order to be supported by competent evidence, this Court's precedent requires some oral testimony, and therefore, more than court reports, attorney's statements, and prior orders. In this case, the trial court heard no oral testimony but instead relied on court reports and prospective guardians' affidavits to make its factual findings. Accordingly, we vacate and remand the trial court' permanency panning order so that the trial court may conduct another hearing in compliance with this Court's precedent.

VACATED AND REMANDED.

Judges COLLINS AND MURRY concur.

---

[5] We note our Court clearly stated in *In re K.M.*, "[t]he trial court did not err in proceeding with disposition absent the presentation of sworn testimony at the disposition hearing[,]" because "[s]ection 7B-901(a) explicitly allows the court in its disposition order to rely on written reports, and to incorporate the findings it made at the adjudication hearing." 272 N.C. App. 487, 493, 492 (2020). In other words, "[i]f these sources of fact are sufficient to support the trial court's conclusions of law and its ultimate disposition, there is no need for the court to hear additional testimony." *Id.* at 492.